## Philip D. Armour et al. v. Felix Brazeau.

1. MASTER AND SERVANT—*Duty of the Servant to Make Critical Examinations of Appliances.*—Where a servant is ordered by a foreman to whitewash a ceiling, and for that purpose to work upon a scaffold, the planks of which are covered with whitewash and had been previously used for a like purpose by the master, the servant is not bound to make a critical examination of the planks of the scaffold for defects; he has a right to assume that the planks are reasonably safe for use or he would not have been ordered to use them.

2. SAME—*The Servant is Bound to Act upon the Knowledge he Has.*— If the servant from any source has the same information that the master has, he is bound to act upon it.

3. SAME—*When a Servant Assumes the Risks Incident to His Employment.*—A servant is not bound to inspect a machine to ascertain

whether it is in proper repair or not; nor is he bound to examine a building from time to time to ascertain whether its timbers and walls are sound; but if defects in the machine, or in the walls or timbers of a building, are obvious, and actually come under his observation, and are such that he knows it to be dangerous to employ them for the purpose for which they are used, and he voluntarily remains in the employment, he must be taken to have assumed the risks incident to his employment.

4. INSTRUCTIONS—*As to the Servant's Means of Knowledge.*—An instruction in an action for personal injuries which states that the plaintiff did not know of the insufficiency, weakness or defects in the planks composing the scaffold upon which he was ordered to work and that he had no means of knowledge thereof equal to those of his employer, is not strictly an accurate statement of the law applicable to this case.

5. PERSONAL INJURIES—*Servant's Right of Recovery.*—A servant may recover for personal injuries sustained by him, although he may have had equal means of knowledge of the defects in the appliances which caused his injury with his master. He is not bound to look for defects except such as are patent and obvious, or to make careful and critical examinations of his surroundings.

6. DAMAGES—*When $2,000 is Not Excessive.*—The plaintiff's leg was broken near the ankle, which necessarily caused him much pain and confined him to his home five months, and one of his testicles was injured, leaving it in an enlarged and hardened condition, four or five times its natural size, in which condition it had become chronic. *It was held* that a verdict for $2,000 was not excessive.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Court County; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in this court at the March term, 1900. Affirmed. Opinion filed February 14, 1901.

Statement by the Court.—Appellee, an employe of the firm of Armour & Co. as a whitewasher, was injured July 17, 1898, by the breaking of a plank on which he stood while at his work, and brought suit against the members of the firm to recover therefor, a trial of which before the Superior Court and a jury resulted in a verdict in favor of appellee for $2,000 and a judgment thereon, from which the appellants, the surviving partners, the death of the remaining partner, Philip D. Armour, Jr., having been suggested, have taken this appeal.

The declaration consists of two counts and an additional count. The negligence alleged is, in the first count, that defendants placed a certain foreman over plaintiff, whom

Armour v. Brazeau.

he was bound to obey; that defendants, by their servants and agents, so negligently and carelessly supervised, directed and managed the work that they ordered plaintiff and others to construct a scaffold of boards, which were not reasonably safe for the purpose for which they were used, in that they were weak and defective; that by reason thereof the scaffolding was built of said boards which were weak and defective, and that while plaintiff and others proceeded about their work upon said scaffolding under the orders of defendants, by their servants, the scaffold, by reason of the premises, broke and precipitated plaintiff to the floor, causing the injuries complained of. The second count is the same, and in addition alleges that defendants, by their servants, who were not fellow-servants of plaintiff, negligently and carelessly constructed said scaffold with boards which were thin and weak, so that the same was not reasonably safe for the plaintiff and others to work thereon; that plaintiff and others proceeded about their work, under orders from defendants, by their servants and agents, whom plaintiff was bound to obey, and while on the scaffold the same broke and precipitated plaintiff to the floor, etc. The additional count alleges negligence in that defendants furnished for said scaffold a certain plank which was defective in that it had a knot therein, which rendered it weak and defective for the purpose for which the same was used by defendants, of which defendants had notice, but plaintiff had not; that while plaintiff was about his work and on said scaffold, the same broke under the weight of plaintiff and other workmen, by reason of the weak and defective condition of said plank, thereby allowing plaintiff to fall, whereby he was injured, etc. All the counts allege due care on the part of the plaintiff.

The plea was the general issue.

The evidence is conflicting upon the questions of negligence of defendants and as to whether the injury was the result of orders given to plaintiff by defendants' foreman.

At the request of appellee the court gave the following instruction, viz :

" 1st.   The jury is instructed that the servant is not bound to inspect the appliances furnished him by his master for the performance of his duties.   The servant has the right to assume that the master has used ordinary care and diligence to furnish him, the servant, with appliances reasonably safe for the performance of his duties.   The servant is bound to take notice of such defects as would be disclosed by ordinary care and diligence in observing the appliances furnished him; and if the jury find from a preponderance of the evidence in this case that there was a defect in the plank in question in this case, and that such defect was the cause of the accident to the plaintiff in this case, and that the plaintiff did not know of such defect, and that he, the plaintiff, in the exercise of ordinary care and diligence would not have discovered the same, then, if you further find that such defect was one which would have been discovered by the defendants in time to have prevented the accident in question by the exercise of ordinary care and diligence in examination and inspection, then the jury should find the defendants guilty; provided the jury believe from the evidence that the plank had been provided by the defendants for use generally in such use as it was being put to at the time of the accident, and if the plaintiff was in the exercise of ordinary care in all his conduct connected with or preceding the accident."

The court also gave for defendants, eight instructions, and refused eight instructions, among others the following, to wit :

" 9th.   The jury are further instructed that the burden of proof in this case is upon the plaintiff; and before he can recover on account of the alleged negligence on the part of the defendants in providing or having for use a weak, defective or insufficient plank as a scaffold, it is necessary for the plaintiff to prove by a preponderance of the evidence :

1st.   That the plank was insufficient, weak or defective, and that the accident happened as the result of such weakness, insufficiency or defect;

2d.   That the defendants had notice or knowledge of such insufficiency, weakness or defect, or that they might have had notice thereof by the exercise of ordinary care;

3d.   That the plaintiff did not know of such insufficiency, weakness or defect, and that he had no means of knowledge thereof equal to those of the defendants; and

4th.   That he was, in his relation to the accident, in the exercise of ordinary care.

If the plaintiff fails to prove, by a preponderance of the evidence, any one of these four propositions, the jury should find for the defendants, even though they find that Gallagher was foreman and gave directions to use plank in question."

Refused: "10th.  The jury are instructed that the mere breaking of the plank in question is not evidence of negligence on the part of the defendants; hence mere proof of the accident and injury to plaintiff does not put the burden upon the defendants and require them to prove that they were not negligent.  After proof of the breaking of the plank in question, and of the injury to the plaintiff, it still remains necessary for him to prove, by a preponderance of the evidence, before he is entitled to recover on the ground that said plank was insufficient, weak or defective, that the accident resulted on account of such weakness, insufficiency or defect, and that the defendants directed the using of said plank, and that they were negligent in so doing, and that the plaintiff was in the exercise of ordinary care, as explained elsewhere in these instructions."

CUSTER, GODDARD & GRIFFIN, attorneys for appellants.

KING & GROSS, attorneys for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

Appellants claim, first, that the allegations of the declaration were not proved; second, that there was error in rulings on instructions; and third, that the verdict is excessive.

In substance the evidence shows that plaintiff and several other men were ordered to whitewash a ceiling in a building of defendants, and to use certain two-inch planks for the purpose of constructing a scaffold about twelve to fifteen feet from the floor, on which the men were to stand while doing the whitewashing.  These two-inch planks had been used for a like purpose in another building of defendants, and were covered with whitewash.  Under orders to use these planks by one Gallagher, a foreman of defendants, plaintiff, with the other men, took two of said planks about twelve inches wide and sixteen feet in length, and constructed a scaffold by placing them on two beams over

which the ends of the planks extended about two feet. Plaintiff and two other men got upon this scaffold and were proceeding with their work, when, within a few minutes, one of the planks broke, the men fell to the floor below, and plaintiff's leg was broken by the fall and he received other injuries. The broken plank had a knot in it at the place where the break was, which extended about three-quarters across the plank in a diagonal direction, and could have been discovered by a careful examination, notwithstanding the whitewash on the plank.

There is a conflict in the evidence as to whether Gallagher was defendants' foreman and had charge of plaintiff and his fellow-workmen or not, and also as to whether he gave plaintiff and the other men any order to use the planks in question. That Gallagher was foreman is testified to by plaintiff and two of his witnesses, who were working with plaintiff at the time, but it is denied by Gallagher, and Brown, the master mechanic of defendants, who testified that *he* had charge of the men.

As to the other question plaintiff testified that he and his fellow-workmen were directed by Gallagher to use the planks in question to construct the scaffold, and that Gallagher ordered him to take one of the planks of which the scaffold was made, and that he, with the assistance of one De Mars, took that plank; also that after the scaffold had been completed, " Gallagher said those boards were all right, to go to work on top of them." His testimony is corroborated by his witness Gunner, who was with him at the time, though the latter witness says on cross-examination that all the men talked about it and agreed they would go and get the two-inch planks, because they were better to use in that room than certain three-inch planks which they had used in another room. He also testified that he and Couchman, who assisted him, tested, by springing it, the plank which they took and which was used in the scaffold. The witness Couchman also corroborated plaintiff as to the orders of Gallagher to take and use the planks in question, though he also says that all the men agreed that the two-

inch planks would be better to use in that room, which was full of electric wires and machinery, than the three-inch planks, which they had previously used in another room. Gallagher denies that he gave any directions to plaintiff and the other men, but says that he merely assented to their proposition to use the two-inch planks, and he is corroborated by De Mars. No other witnesses testified on the subject.

In view of this conflict on both these questions, it was for the jury to determine with which side was the truth, and from a careful examination of the evidence we can not say that their determination in favor of the plaintiff can be said to be manifestly against the evidence.

It appears from the evidence of all the witnesses who testified on the subject, including Gallagher, that the two-inch planks were covered by whitewash and had previously been used by defendants in another building for like purposes for which plaintiff and his fellow-workmen were using them.

If, then, Gallagher was in fact the foreman of defendants in charge of plaintiff and the others working with him, and in fact ordered them to use the planks in question, and they did so, defendants are, notwithstanding appellants' claim that the negligence, if any, was of plaintiff's fellow-servants, responsible to plaintiff in this action, unless plaintiff failed to exercise ordinary care for his own safety, or the defect in the plank should have been known to him, and the danger of its use so apparent that no man of ordinary prudence would have incurred the risk. There is no claim that plaintiff in fact knew of the defect. The planks were covered with whitewash and had been used for a like purpose by defendants, as plaintiff knew. He was not bound under the circumstances to make a critical examination for defects—had the right to assume that the planks were reasonably safe for use or he would not have been ordered to use them by Gallagher—and we therefore think the jury were justified in finding that he exercised ordinary care. These being our views we deem it unnecessary to consider

the argument of appellants' counsel, that the allegation that defendants furnished the defective plank is not established by the evidence to the effect that it had been provided by the defendants for use, generally, in such use as it was being put to at the time of the accident.

From a careful reading of appellants' argument as to plaintiff's instruction given, we think there was no error in giving it. There was evidence on which to base it, and we see no objection to the principles of law therein announced.

As to instruction 9 requested by defendants, we think it was properly refused. It would seem from the case of Goldie v. Werner, 151 Ill. 551–6, and other cases cited by appellants' counsel, that it announces a correct rule as to what should be proved by a plaintiff in a case of this kind before he is entitled to a recovery, but we think that under the later rulings of the Supreme Court the third item of this instruction, viz., " that the plaintiff did not know of such insufficiency, weakness or defect, and that he had no means of knowledge thereof equal to those of the defendants," is not strictly accurate, at least as applied to this case.

The same author, Wood on Master and Servant, Sec. 376, from which the rule laid down in the Goldie case is taken, says:

" If the servant, from any source, has the same information that the master has, he is bound to act upon it; but the general statement made in some of the cases, that if the servant has the same means of information that the master has, the latter is excused from liability, must be taken in a qualified sense, and only applies to information in fact possessed by the servant, or that which is patent and obvious. A servant is not bound to inspect a machine to ascertain whether it is in proper repair or not; nor is he bound to examine a building from time to time to ascertain whether its walls and timbers are sound; but if defects in the machine or in the walls or timbers of a building are obvious, and actually come under his observation, and the defects are such that he knows that it is dangerous to employ them for the purpose for which they are used, and he voluntarily remains, he is taken to have assumed the risks incident thereto. But not only the defects, but the danger must be known to him. If, as is said in some of the cases, a servant

can not recover if he has the same means of information that the master has, he would be bound to look for defects, to inspect the appliances of the business, and would thus be burdened with the duties that legally and properly devolve upon the master, and could seldom recover for injuries resulting from the use of defective machinery. There is no such legal obligation imposed upon him. He is not bound to search for danger, except as to those risks that are patent to ordinary observation; he has a right to rely upon the judgment and discretion of his master, and he will fully perform his duty toward him."

In Union Show Case Co. v. Blindauer, 175 Ill. 325–7, which was a case of injury from defective machinery of an elevator, the court held that it was not enough to prevent recovery that plaintiff knew of the defect, but that it was thereby rendered unsafe; that "the dangers must be known to him." To the same effect is C. & E. I. R. R. Co. v. Knapp, 176 Ill. 127, a case of injury from a defective drawbar in a freight car; also McGregor v. Reid, 178 Ill. 463, and Ross v. Shanley, 185 Ill. 390–3, in which latter case the injury was caused from defective shoring in a tunnel, which it was claimed the plaintiff knew about as well as his foreman, or could have known by the exercise of ordinary care on his part. The court held that the foreman was charged with a specific duty to exercise ordinary care to see that the place where he sent plaintiff to work was reasonably safe, and that plaintiff was not required to make a critical and careful examination of his surroundings at the place where he was sent to work by the foreman." From these authorities we think plaintiff might recover although he had equal means of knowledge of the defect in the plank with that of the defendants. He is not bound, as said by Mr. Wood, "to look for defects except such as are patent and obvious, and to inspect the appliances of the business;" and, as said in the Ross case, he is not required to "make a critical and careful examination of his surroundings." These are matters with which defendants were specifically charged, and he had a right to rely upon their doing this duty toward him. He was ordered to use the planks, and after the scaffold was made he was told by the foreman

they were all right. His duty was obedience, and the defect and danger therefrom not being patent and obvious, he should not be denied the right of recovery.

The tenth instruction in effect excludes from the consideration of the jury the additional count, and was properly refused. Other instructions requested by defendants were refused, and, we think, properly so, for reasons which sufficiently appear from what has already been said.

We can not accede to appellant's claim that the damages are so excessive as to justify our interference therewith. Plaintiff's leg was broken near the ankle, which necessarily caused him much pain and confined him to his home five months, and one of his testicles was injured, as he claims, leaving it in an enlarged and hardened condition, four or five times the natural size, though he did not tell his physician of it at the time because he says he was bashful and ashamed. The physician says this was chronic at the time plaintiff spoke of it to him, nearly a year after the accident, and that plaintiff then said this injury was caused by his fall. He also says his hearing was injured, and it appears his physician's bill was about $100.

We think the judgment should be and it is affirmed.