PHILIP D. ARMOUR et al.

v.

FELIX BRAZEAU.

*Opinion filed June 19, 1901.*

1. INSTRUCTIONS—*instruction must be clear and must be applicable to the evidence.* An instruction must be clear and simple, and consist of a plain statement of the law, which may be readily understood by the ordinary men who are called as jurors, and must be applicable to the evidence and the facts in the case.

2. MASTER AND SERVANT—*duty of "inspection" rests upon the master.* The liability of machinery and appliances to get out of order from time to time gives rise to the duty of using reasonable care to keep them in fit condition, which is the duty of "inspection" as meant by the law; and this duty rests upon the master, and not upon the servant.

3. SAME—*though not required to inspect appliances, servant is bound to notice open defects.* Although a servant is not required to make the critical examination of appliances which is meant by the term "inspection," yet if the defect is open and obvious, so that by the exercise of ordinary care in the use of the appliance he would have knowledge of the defect, he is charged with notice thereof, since the servant cannot assume that a defect which is open to observation does not exist.

4. SAME—*elements necessary to authorize a recovery by a servant for injuries from defective appliance.* Before a servant can recover because of alleged negligence of the master in providing a defective plank for a scaffold, he must show that the plank was defective and that the injury was occasioned thereby; that the master had notice of the defect, or might have had by exercise of ordinary care; that the servant did not know of the defect and had not means of knowledge equal to those of the master, and that he was, in relation to the accident, in the exercise of ordinary care at the time he received the injury.

MAGRUDER, J., dissenting.

*Armour & Co.* v. *Brazeau,* 93 Ill. App. 235, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

A. R. URION, and A. B. STRATTON, (A. F. REICHMANN, of counsel,) for appellants:

Where the master does not undertake the duty of furnishing or adopting the appliances by which the work is to be performed, but this duty is entrusted to or assumed by the workmen themselves, within the scope of their employment, he is exempt from responsibility if suitable materials are furnished and suitable workmen are employed by him, even if they negligently do that which they thus undertake. *Kelley* v. *Norcross*, 121 Mass. 508; *Ross* v. *Walker*, 139 Pa. St. 42; *Griffiths* v. *Railroad Co.* 149 N. Y. 595; *Butler* v. *Townsend*, 126 id. 105; *Fraser* v. *Lumber Co.* 45 Minn. 235.

If the structure, appliance or instrumentality is one which has been furnished by the master for the work in which the servants are to be engaged, the master must exercise reasonable care in their selection or preparation. *Fraser* v. *Lumber Co.* 45 Minn. 235.

If the furnishing, selection or preparation of the structure, appliance or instrumentality is itself part of the work which the servants are to perform, the master is not liable for negligence in its selection or preparation or in the selection of materials therefor. *Fraser* v. *Lumber Co.* 45 Minn. 235.

Whether an employee is a fellow-servant or a vice-principal must be determined by the nature of the duties which he is performing. If he is performing merely the duties of a servant, then, as to the others engaged in the prosecution of the same common object, he is a mere fellow-servant; but if he is performing a duty which the master primarily owes to his servants, then, as respects such duty, he is the representative of the master. *Gall* v. *Beckstein*, 173 Ill. 187; *Fraser* v. *Lumber Co.* 45 Minn. 235; *Peffer* v. *Cutler*, 83 Wis. 281; *Noyes* v. *Wood*, 102 Cal. 389.

If the negligence complained of consists of an act or omission by the superior servant which relates, not to his supervisory duties, but to his duties as a co-laborer

with those under his control, the master is not liable. *Railroad Co.* v. *May,* 108 Ill. 288.

A servant, in order to recover for defects in the appliances of the business furnished him, is called upon to establish three propositions: First, that the appliance was defective; second, that the master had notice thereof or knowledge, or ought to have had; and third, that the servant did not know of the defects and had not equal means of knowing with the master. *Pennsylvania Co.* v. *Lynch,* 90 Ill. 333; Wood on Master and Servant, sec. 414; *Goldie* v. *Werner,* 151 Ill. 551; *Howe* v. *Medaris,* 183 id. 288; *Hines Lumber Co.* v. *Ligas,* 172 id. 320; *Railroad Co.* v. *Wilson,* 189 id. 98; *Kammer* v. *Weber,* 151 N. Y. 418.

KING & GROSS, for appellee:

While the servant assumes the ordinary risks of his employment, and, as a general rule, such extraordinary risks as he may knowingly and voluntarily see fit to encounter, he does not stand upon the same footing as the master, as respects the matter of care in inspecting and investigating the risks to which he may be exposed. 14 Am. & Eng. Ency. of Law, 854, and cases cited.

The servant has the right to assume that the material and employment furnished him by his master are safe and suitable for the business engaged in. 14 Am. & Eng. Ency. of Law, 855, and cases cited.

It is the duty of the master to use ordinary care to examine and inspect the appliances and implements furnished by him to his servants, and it is the duty of the servants to use ordinary care and diligence to observe. This doctrine does not conflict with the doctrine that no sane man is expected to act upon an assumption which he knows to be false. It is a man's duty to exercise common sense when in the employment of the master as well as at any other time. The master has a right to rely upon the servant doing this. *Jennings* v. *Tacoma R. & M. Co.* 7 Wash. 275.

· The employee is not under like obligation as the master to resort to means for the discovery of defects. He has a right to presume that his employer has done his duty and complied with the requirements of the law, and it is only when he has knowledge of the defects in the machinery which he is required to use, and continues to use without objection, that he is presumed to waive the defect. It is not true that the plaintiff's right of recovery is defeated by the use of machinery without objection when he has simply the means of knowledge of defects therein the same as his employer. *Muldowney* v. *Railroad Co.* 36 Iowa, 462.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellee worked, with others, for appellants as a whitewasher in one of their buildings. He and the others who worked with him made a scaffold to stand on, by putting two planks, two inches thick, twelve inches wide and sixteen feet long, on beams in the building, the ends resting on the beams. Across these two planks they put three short pieces. While appellee and two others were standing on the scaffold, whitewashing, one of the planks broke, and appellee fell upon a dynamo and his leg was broken. He brought this suit to recover damages for the injury.

The declaration consists of three counts. In the first, the alleged liability of defendants for the injury is based upon the charge that they, by their servants and agents, carelessly and negligently ordered the plaintiff and others to construct a scaffold of boards which were not reasonably safe for the purpose for which the same were used, in that they were weak and defective. The charge in the second count is, that the defendants, by their servants who were not fellow-servants of the plaintiff, negligently and carelessly constructed the scaffold with boards which were thin and weak, so that the said scaffold was not

safe for the plaintiff and others to work upon, and that the plaintiff and others proceeded upon said scaffold under orders from the defendants, by their agents and servants in that behalf whom the plaintiff was bound to obey. The wrong alleged in the third count was, that the defendants, by their servants and agents who were not fellow-servants with the plaintiff, furnished for said scaffold a certain plank which was defective, in that it had a certain knot therein, which rendered it weak and not reasonably safe for the purpose for which it was used, of which fact defendants had notice but plaintiff had not. The plea is the general issue. There was a trial, which resulted in a verdict against defendants for $2000, on which judgment was entered, and the Appellate Court affirmed the judgment.

The evidence tended to prove the following facts: Plaintiff had worked for defendants about three months. Defendants were putting up a building, and for the first six or seven weeks plaintiff handled lumber, assisting in hoisting it and moving it on trucks around the building where it was wanted. After the men got through with that work he was set to whitewashing, and had been at that work about a month and a half. He and his fellow-workmen whitewashed the new building outside and in, and in doing that work they took two-inch planks that were around the premises and made scaffolds by putting the planks on horses. When the planks were first taken for that use by the plaintiff and his fellow-workmen they were clean, but afterwards got more or less whitewash on them. After that job was done, Mr. Brown, the master mechanic who had general charge of the men, set plaintiff and the others to whitewash in the Brown engine room, in another building. Plaintiff and his associates put up three-inch planks for a scaffold in one of the rooms and worked there a short time, when they went into another room. Plaintiff and the other men talked it over that the three-inch planks which they had used

in the first room were too heavy to handle among the pulleys and electric wires, and therefore they concluded to get two-inch planks. Gallagher, who worked with the others at the whitewashing, was a painter as well as whitewasher, and understood more about the business than the others. He mixed the whitewash and gave the men general directions in the work. The proposal to get two-inch planks did not originate with Gallagher, but the three-inch planks were rejected because they were not easy to handle, and this was done at the instance of plaintiff, with the other workmen. Gallagher assented to the proposal, and the men all went together to look for two-inch planks. They went to the carpenter shop and found a pile of planks, consisting of three-inch planks on top and some two-inch planks at the bottom. Himmelwright, the boss carpenter, told the men that it would be better to go over to the felt works and get some planks over there, and that it would save time, rather than upset the pile at the carpenter shop. The felt works was the new building, about a block away, where they had done the whitewashing before. When the men got to the felt works they found ten or fifteen of the two-inch planks, with more or less whitewash on them, which they had used before, lying around on the floor and some of them covering a shaft-hole designed for an elevator. One of these planks was taken from the floor by two of the other men, who tested it by one getting upon it and springing it, and they carried that plank to the engine house. Plaintiff and one of the other men took one of the planks that was over the shaft-hole. There was a dispute in the evidence as to who picked up that plank. Plaintiff testified he stooped down to pick up a plank, and Gallagher had a plank in his hand and handed it over to him and said to take that plank over, and he took hold of the rear end of the plank and Henry DeMars carried the front end, and he did not examine the plank at all. One of plaintiff's witnesses testified that Gallagher told

them to take those planks that were there, but did not say any certain board; that Gallagher picked up one end of the plank and gave it to plaintiff, but did not tell any one to take that plank. Gallagher and DeMars were called by the defendants, and Gallagher testified that he did not handle the plank or say anything to plaintiff about it, but only told plaintiff, when he lifted it up, to push the others over so as not to leave the open space in the elevator shaft. DeMars, who carried the other end of the plank, testified that he and plaintiff picked up the plank and no one told them to take it. After the plaintiff and his associates reached the engine room they put up the planks on the beams. It was a part of their work to erect their own scaffold, and no one else had anything to do with it, but plaintiff testified that after they got them fixed Gallagher said the boards were all right—to go to work. The plank that broke had a knot on one side of it running diagonally the greater part of the width of the plank. There is no evidence as to which one of the planks broke, unless there is an inference from the test made of one of them by one man getting upon it, and there were three men on the scaffold, with heavy pails of whitewash, at the time of the accident.

The court gave to the jury the following instruction at the instance of the plaintiff:

"The jury is instructed that the servant is not bound to inspect the appliances furnished him by his master for the performance of his duties. The servant has the right to assume that the master has used ordinary care and diligence to furnish him, the servant, with appliances reasonably safe for the performance of his duties. The servant is bound to take notice of such defects as would be disclosed by ordinary care and diligence in observing the appliances furnished him; and if the jury find, from a preponderance of the evidence in this case, that there was a defect in the plank in question in this case, and that such defect was the cause of the accident to the

plaintiff in this case, and that the plaintiff did not know of such defect, and that he, the plaintiff, in the exercise of ordinary care and diligence would not have discovered the same, then, if you further find that such defect was one which would have been discovered by the defendants in time to have prevented the accident in question by the exercise of ordinary care and diligence in examination and inspection, then the jury should find the defendants guilty, provided the jury believe, from the evidence, that the plank had been provided by the defendants for use generally, in such use as it was being put to at the time of the accident, and if the plaintiff was in the exercise of ordinery care in all his conduct connected with or preceding the accident."

It is one of the requirements of the law that an instruction shall be clear and simple, and consist of a plain statement of the law which may be readily understood by the ordinary men who are called as jurors. There may be a difference between inspecting a plank and observing it and exercising care to discover a defect in it, but to the mind of the average juror there would be but little difference between them, and the instruction undertakes to state the duty of plaintiff in these several particulars. It starts out with the proposition that a servant is not bound to inspect the appliances furnished him, but may assume that they are reasonably safe for the performance of his duties. According to that part of the instruction plaintiff had nothing to do, but was expressly exempt from paying any attention to the plank to ascertain whether it was fit for use, but might rightfully assume that it was fit. The next proposition is, that a servant is bound to take notice of such defects as would be disclosed by ordinary care and diligence in observing the appliances furnished him. Applying the rule to this case, plaintiff was bound to take notice of the knot if it was of a character to be disclosed by ordinary care and diligence in observing the plank. Then follows an hypothesis of

fact upon which the jury are ordered to find the defendants guilty, and it embraces as one of the facts that the plaintiff, in the exercise of ordinary care and diligence, would not have discovered the defect, which consisted of the knot. Such an instruction furnished no clear and simple guide to enable ordinary men to apply the law in determining the rights of parties. The jury might follow the first part of the instruction, which told them that plaintiff might assume that the plank was all right and was not bound to inspect it, or the other proposition, that required of him ordinary care and diligence in observing it and discovering defects in it. They could not follow both, and the only tendency of the instruction would be to confuse them on the subject. Another requirement is, that an instruction shall be applicable to the evidence and the facts in the case, and the instruction violates that rule. It is the duty of an employer to use ordinary care and diligence to provide the employee with reasonably safe appliances with which to work. This obligation of the employer is a personal one, and if he delegates its performance to another, he is responsible for the manner in which it is performed. This duty includes ordinary care in the examination of appliances furnished to workmen. If there was any breach of that duty in this case, it was in furnishing the plank which had a knot in it, and not in a failure to make subsequent inspection, by which a changed or weakened condition would have been made manifest. There is a duty of the employer arising out of the liability of machinery or appliances to get out of order from time to time or to become unfit for use from wear or from age and decay, and this is the duty of inspection as meant by the law. While there is no absolute duty to keep appliances in safe condition, there is a duty to use reasonable care to keep them fit, and this duty may require inspection at reasonable intervals and the employment of such tests as will reveal the condition of the machinery or appliances. This duty of inspection

rests upon the employer and not upon the employee, and depends upon the character of the machine or appliance, since ordinary care may require an inspection oftener in one case than in another. The rule as to such inspection is correctly stated in the instruction, but it is not applicable to the facts of the case, and to give it was prejudicial to the defendants.

The court refused to give the following instruction asked by the defendants:

"The jury are further instructed that the burden of proof in this case is upon the plaintiff, and before he can recover on account of the alleged negligence on the part of the defendants in providing or having for use a weak, defective or insufficient plank as a scaffold, it is necessary for the plaintiff to prove, by a preponderance of the evidence, (1) that the plank was insufficient, weak or defective, and that the accident happened as the result of such weakness, insufficiency or defect; (2) that the defendants had notice or knowledge of such insufficiency, weakness or defect, or that they might have had notice thereof by the exercise of ordinary care; (3) that plaintiff did not know of such insufficiency, weakness or defect, and that he had no means of knowledge thereof equal to those of the defendants; and (4) that he was, in his relation to the accident, in the exercise of ordinary case. If the plaintiff fails to prove, by a preponderance of the evidence, any one of these four propositions, the jury should find for the defendants, even though they find that Gallagher was foreman and gave directions to use plank in question."

The main principles stated in this instruction were declared to be the law in *Goldie* v. *Werner,* 151 Ill. 551, where they were quoted from section 414 of Wood on the Law of Master and Servant, and they have been adhered to and repeated in substantially the same language in *Hines Lumber Co.* v. *Ligas,* 172 Ill. 315, *Howe* v. *Medaris,* 183 id. 288, and *Lake Erie and Western Railroad Co.* v. *Wilson,* 189 id. 89.

If a defect in an appliance is open and obvious, so that by the exercise of ordinary care in the use of the appliance the employee will have knowledge of the defect, he is bound to take notice of the defect. He cannot assume a fact against his own knowledge, and assume that a defect open to his observation does not exist. The claim that we have departed from the rules stated in the instruction is unwarranted, and we do not understand how the rule that a servant must not only know of a defect but also know that the defect renders the appliance unsafe, tends to support such a claim. It is true, that in order to charge an employee with negligence he must know of the defect, and must know that it is such as will interfere with the use of the appliance so as to make it dangerous to use it; but if plaintiff knew that there was a knot running across this plank he necessarily knew that it weakened it and rendered it unsafe. It is also true, as already stated, that a workman is not bound to make the critical examination which is meant by the term "inspection," to ascertain whether a machine or appliance is in good repair, nor to make such inspection of premises to ascertain whether they remain in good condition. Where such questions have arisen the rules applicable to them have been stated, but as applied to the facts of this case there has been no departure from the rules stated in the instruction, and it should have been given.

The judgments of the Appellate Court and the superior court of Cook county are reversed and the cause is remanded to the superior court.

*Reversed and remanded.*

Mr. JUSTICE MAGRUDER, dissenting: I think the judgments of the lower courts are correct, and should be allowed to stand for the reasons given in the opinion of the Appellate Court delivered upon the decision of this case and reported as *Armour* v. *Brazeau,* 93 Ill. App. 235.