Myrtle Jorte, Administratrix of the estate of Roy Jorte, deceased, Appellee, v. Chicago & Alton R. R. Co., Appellant.

1. MASTER AND SERVANT—*duty of switchman to inspect appliances.* Where a brakeman is furnished with printed rules requiring him to examine and know condition of brakeshafts, hand holds and similar appliances, he is not, when he is made a switchman, charged with the duty of inspection if there is no evidence of rules concerning switchmen.

2. MASTER AND SERVANT—*when employer's knowledge of defects is a question for the jury.* A switchman was killed while boarding an engine tender. No one saw how he fell but he exclaimed "the cut lever is the cause of this." The cut lever was attached to a bracket that was attached to a wooden sill of the tender and was found pulled off. There was evidence that the bracket was cracked and that the sill was rotten and it did not appear that deceased had any knowledge of such conditions. *Held*, it was a question for the jury whether defendant company had actual or constructive knowledge of the defects.

3. MASTER AND SERVANT—*when employer is negligent in furnishing defective equipment.* A switchman was killed while boarding an engine tender and a bracket attached to a wooden sill and holding a cut lever was found to have been pulled away. There was evidence that the bracket had been cracked and that the sill was rotten. *Held*, the jury might reasonably find that the company had been negligent in furnishing defective equipment.

4. MASTER AND SERVANT—*evidence sufficient to show due care of employe.* Where a switchman was killed while boarding an engine tender by the giving away of a bracket holding a cut lever, and the evidence shows that he was an able bodied man, twenty-seven years of age, of careful habits, industrious and sober and that he was performing his duty in the customary manner, his due care may be inferred from the circumstances.

5. MASTER AND SERVANT—*due care may be shown by circumstances.* Direct testimony on an issue whether a servant was using due care when injured is not required but only the best evidence that is susceptible of being adduced under the circumstances of the case.

6. MASTER AND SERVANT—*when proximate cause of injury is for the jury.* A switchman was killed while boarding an engine tender in the night time, and the equipment of a cut lever attached to the tender was found to have been defective, of which condition he had no knowledge. It was claimed that he might have grasped the cut lever instead of a grab iron. There was evidence that switchmen sometimes caught the cut lever in the night instead of a grab iron, they being a few inches apart and about the same size. It was a part of decedent's duty to use the cut lever. *Held,* it was a question for the jury as to the proximate cause of the death, and they might reasonably find the defective cut lever to have been the cause.

7. MASTER AND SERVANT—*when evidence admitted on condition is properly followed up.* A switchman was killed apparently by a defect in a cut lever that he was required to use which was attached to an engine tender. Evidence as to what was the matter if a "knuckle" did not open when the cut lever was used was admitted on a promise to supply evidence that it did not open. Another switchman testified that the knuckle "worked hard and did not work as easy as it should so I used a chain after that." *Held,* the evidence was properly admitted.

Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed March 15, 1912. *Certiorari* denied by Supreme Court (making opinion final).

PATTON & PATTON, for appellant; SILAS H. STRAWN, of counsel.

DRENNAN & LAWLER, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This is an action in case begun by Myrtle Jorte, administratrix of the estate of Roy Jorte, deceased, against the Chicago and Alton Railroad Company to recover damages for the death of plaintiff's intestate, averred to have been caused by the negligence of the defendant. A jury returned a verdict against the de-

fendant for $7,000 upon which judgment was rendered. The defendant prosecutes this appeal.

The declaration contains two counts substantially alike. They aver in substance that the deceased was in the employ of the defendant as a switchman; that the defendant negligently failed to use reasonable care to furnish the deceased reasonably safe appliances, in that it negligently furnished him a steam engine with a tender attached for switching purposes, the cut bar of said tender and the wooden beam to which it was adjusted, being old, rotten, broken, weak, worn out, defective, and out of repair, which condition was known to the defendant or by the exercise of reasonable diligence on the part of the defendant could have been known, but the deceased did not know of said condition and by the exercise of due care on his part it could not have been known to him; that while the deceased was engaged at work upon said engine in the line of his duty as switchman and in the exercise of due care for his safety, by reason of said cut bar, castings and wooden beam being old, rotten, broken, weak, defective and out of repair, one of the castings pulled loose and gave away from the wooden beam, by reason whereof deceased was thrown or fell from the footboard of said tender and killed.

The appellant has raised no question concerning the declaration or as to the giving or refusing of any instructions, with the exception that it contends that a peremptory instruction to find for the defendant should have been given, because there is no evidence tending either to show that the death of Jorte was caused by the defect in the cut lever, or that he was in the exercise of due care.

The evidence shows that Jorte was working as a night switchman in the switch yard of appellant at Rigley on the night of October 21, 1910, when he was killed shortly after midnight; that he was working with another switchman named Sutton, Jorte working

on the engine and Sutton in the yards; the engine tender had a sloping tank with a "cut lever" running across the end that could cut from both sides. A "cut lever" is an iron rod running along the sill at the rear of the tank on the tender. It is held in place by an iron bracket at each end and one in the middle fastened to the sill and terminates with a lever at each end on the side of the tender just outside the end brackets. Its use is to raise the pin or lock block in the knuckle by a short lever attached in the center with a chain connecting the center lever with the pin so that the automatic car coupling can be opened with the cut lever. A few inches above the cut lever is a grab iron or hand rail about the same size as the cut lever, fastened at each end to the tank sill, for the support of the men riding on the footboard of the tender. During the afternoon before Jorte was killed and while the day switchmen were at work, in making a coupling the knuckle on this tender passed another, and the T on the cut lever struck the vestibule of a coach bending the rod so that the cut lever did not work easy after that time. When Jorte went to work the chain that connects the cut lever with the pin was also discovered to be out of order; this was reported to the engineer and fixed by him. The evidence further shows the bracket on the right-hand side had been cracked on top of the sill near the shoulder of the casting for some time, as was shown immediately after the accident by the rusted condition of the fracture. A witness, McGahey, testified that he was working with this engine in the daytime, two days before the deceased was injured by this engine, and noticed that the bracket on the cut lever on the right-hand side of the tender was loose; that he drove an ordinary railroad spike into the sill at the side of the bracket to fasten it; that the spike drove in easy as he drove it in with an inch bolt a foot long and that the sill was inclined to be rotten.

He did not observe that the end bracket was cracked or broken but did see the center bracket was broken.

About midnight the foreman gave an order to the switching crew, with which Jorte was working, to take the engine and get some cars about four car lengths distant from the tender. Sutton and Jorte were then standing about opposite the cab of the engine. Jorte said "let us go" and started to the end of the tender and stepped on the footboard. Sutton saw nothing further, as he stepped on the footboard at the front of the engine as it passed him and immediately heard some one cry out and saw the foreman give a stop signal. Sutton went back to the tank and heard Jorte crying out under the tank. Sutton said how did you happen to get this, and Jorte said "the cut lever is the cause of this." On examining the tender, it was found the bracket on the west side of the sill was pulled off, and the cut lever at the west end, the right-hand side was hanging down across the coupler.

The proof also shows that Jorte had been a brakeman for the defendant from October, 1909, until December, 1909, when he became a switchman. As a brakeman he was furnished with a set of printed rules. One of the printed rules requires all brakemen to examine and know the condition of the brakeshafts, ladders, running boards, steps and hand holds and know that they are in proper condition. The evidence does not show that there are any rules concerning switchmen. Appellant argues that "the position of brakemen and switchmen are practically the same, the only difference being that brakemen work out on the road, while the switchmen's duties are confined to the yards." Switchmen work by the hour and brakemen by the trip. While they have some similar duties to perform a switchman is not a brakeman. The defendant required parties desiring to work in either one of these situations to sign a written application stating the employment the applicant desired. There is noth-

ing in the rules requiring inspection by switchmen, and the deceased when injured was acting under the direct orders of a foreman of defendant.

The deceased had never worked with this engine in the daytime, and the evidence does not show that he had any knowledge or information that the sill of the tender, to which the bracket that gave way was attached, was rotten. It was a question for the jury to decide from the evidence, whether the defendant had, or ought to have had, knowledge of the condition of the sill and bracket or either of them.

"The servant is under no primary obligation to inspect for latent defects and test the fitness and safety of the place, fixtures, or appliances provided him by the master. He may assume that they are fit and safe, and though the circumstances may be such a servant is chargeable with knowledge of such defects as are patent and obvious and of such defects as in the exercise of ordinary care he ought to have knowledge of, the servant is not to be deemed as having notice or knowledge of such defects and insufficiencies as can be ascertained only by investigation and inspection for the purpose of ascertaining that there is no danger." Wrisley Co. v. Burke, 203 Ill. 250; Armour v. Brazeau, 191 Ill. 117. "While there is no absolute duty to use reasonable care to keep appliances in safe condition, there is a duty to use reasonable care to keep them fit, and this duty may require inspection at reasonable intervals, and the employment of such tests as will reveal the condition of the machinery or appliances. This duty of inspection rests upon the employer and not the employee and depends on the character of the machine or appliance, since ordinary care may require an inspection oftener in one case than in another." Missouri Malleable Iron Co. v. Dillon, 206 Ill. 145.

The jury might reasonably find from the evidence that the defendant was negligent in furnishing the

deceased an engine to work with, the sill of the tender of which was so defective or rotten that the lag screws which fastened a bracket holding the cut lever in place, pulled out and that the said bracket or casting was fractured and that the defendant had notice of such defects.

No person saw how the deceased fell under the engine, but it is clear that he fell because of the bracket giving way at the end of the cut lever. The evidence shows that he was an able-bodied man, twenty-seven years of age, of careful habits, industrious and sober and that he was performing his duty in the customary manner when injured. From the circumstances in evidence due care by the deceased may be inferred. Direct testimony on that issue is not required but only the best evidence that is susceptible of being made under the circumstances of the case. C. & A. R. R. Co. v. Carey, 115 Ill. 115; E. J. & E. Ry. Co. v. Hoadley, 220 Ill. 462.

Appellant also contends that the judgment cannot be sustained because the proof does not show that the deceased was working with the cut lever to open the knuckle of the coupler when injured, and that he may have grasped the cut lever instead of the grab iron when he stepped on the footboard of the tender.

The evidence is that switchmen, in the night time, must hold their lanterns to see to step on the foot board and grab with the other hand at the grab iron, and that sometimes they catch the cut lever as the cut lever and the grab iron are only four or five inches apart and about the same size. The cars they were going to get were only about four car lengths distant when they started. The cut lever had worked stiff since the accident in the afternoon. It does not appear that the deceased had any knowledge of the accident that damaged the cut lever. The engine had moved its length, since Sutton, standing until the engine passed him, had stepped on the footboard at the

other end before he heard the deceased cry out. It was the duty of the deceased to open the automatic coupler before reaching the cars. In performing that duty the handle of the cut lever would be pulled in the direction away from the sill of the tender. It was a question for the jury under the circumstances to decide what was the proximate cause of the injury, and they might reasonably find the defective cut lever to have been the cause while the deceased was in the performance of his duty.

Plaintiff asked the witness Sutton, a switchman, "If the knuckle don't open when you pull the pin with the cut lever then what is the matter?" The court permitted this question to be answered on the promise of counsel that there would be evidence that it did not open. The witness answered "on account of the knuckle not being greased or working right, it should be kept oiled." There was proof that the knuckle did not work right all the afternoon by the witness Follard. He was the switchman working with the engine when the couplings passed each other; he testified, "it worked hard and did not work as easy as it should so I used the chain after that, just used the lever once after the collision." We find no error in the ruling concerning this evidence.

While appellee has assigned cross errors, in the view we take of this case it is not necessary to review them. No sufficient reason having been shown for the reversal of this judgment, it is affirmed.

*Affirmed.*