### Mary Owsianny, Administratrix, Appellee, v. Saline County Coal Company, Appellant.

1. MINES AND MINERALS, § 121*—*when defect is patent.* Where a miner, killed by a tub tipping over on striking the edge of an opening in a platform, was a man of mature years and experience and had numerous opportunities in passing up and down the shaft to observe the closeness of the tub to the platform in passing through the hole, such defect is a patent one that the deceased was presumed to know.

2. MINES AND MINERALS, § 119*—*when servants know of improper order.* Where a miner was killed by a descending tub tipping over on striking the edge of a platform at a time when a safety link preventing a hook from slipping from the bail of the tub was not in place, the fact that a workman giving the order to "hoist away" was in the act of taking hold of the hook does not indicate an intention not to hoist until sufficient slack was received to adjust the hook.

3. MASTER AND SERVANT, § 304*—*when risk of master's negligence is assumed.* The doctrine that a servant does not assume the risk of the master's negligence may apply if the servant was working under an imperative order of the master with assurance of safety,

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

Owsianny v. Saline County Coal Co., 183 Ill. App. 518.

or if the servant had no knowledge of the conditions, but cannot be invoked where the servant had knowledge of the defects.

4. MINES AND MINERALS, § 131*—*when contributory negligence not excused by breach of nondelegable duty.* That a workman in a mine was a vice principal and has been directed never to send a tub down until it had been fastened properly to a hook and the duty could not be delegated, does not relieve a miner in the tub of contributory negligence in not seeing that a safety link was properly adjusted.

5. MINES AND MINERALS, § 114*—*who not a vice principal.* Where the death of a miner, killed by a descending tub, was caused by a failure to adjust a safety link, generally adjusted at the bottom of the shaft, to prevent a hook from slipping from the bail of the bucket, an employe, having duties to assist in unloading tubs and to do relative work in connection therewith, is not a vice principal when adjusting the hook at the top of the shaft in accordance with directions.

6. MINES AND MINERALS, § 135*—*when contributory negligence not to adjust hook.* A miner killed by a descending tub striking on edge of the opening in a platform, who knew that a safety link, preventing a hook from slipping from a bail of the tub was not in place and of the proximity of the tub to the hole, and that it was a violation of the master's orders for the men to descend when the link was not adjusted is guilty of contributory negligence where he fails to adjust the link or to make any protest.

7. MINES AND MINERALS, § 131*—*when risk is assumed.* A miner killed by a tub striking a hole in a platform, knowing that a safety link preventing a hook from slipping from bail of the bucket was not in place, and having opportunity to know of the close proximity of the tub to the hole, assumed the risk.

8. MASTER AND SERVANT, § 572*—*matters servant has burden to prove.* Before a servant can recover against his master for injuries sustained from an appliance, the burden is upon him to show that the appliance was defective, that the master had actual or constructive knowledge thereof and that the servant did not know of the defect and had not equal means of knowing with the master.

Appeal from the City Court of Harrisburg; the Hon. ALBERT E. SOMERS, Judge, presiding. Heard in this court at the March term, 1913. Reversed with finding of facts. Opinion filed October 9, 1913.

M. S. WHITLEY and E. E. DENISON, for appellant.

CHOISSER, CHOISSER & KANE, CLARK & HUTTON, and GEORGE E. DODD, for appellee.

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

MR. PRESIDING JUSTICE MCBRIDE delivered the opinion of the court.

The plaintiff recovered a judgment in the City Court of Harrisburg against the defendant for eighteen hundred dollars and costs, and the defendent prosecuted this appeal.

About September 15, 1910, the appellant commenced the sinking of a shaft with a view of opening up a coal mine near Harrisburg, in Saline county, Illinois. They had sunk the shaft to a depth of about two hundred and sixty-five feet at the time of this accident, which happened at about seven o'clock in the evening of February 13, 1911. In the prosecution of this work the appellant had erected a tipple upon which it had placed a sheave wheel at a distance of about eighteen feet from the surface of the ground, and at a distance of about ten feet from the ground a heavy platform had been constructed to be used in receiving the buckets and as a place from which the material brought up from the shaft was dumped. About the center of this platform an opening was cut four and a half feet square. This platform was reached by steps and was used as the place from which men were sent down into the mine and on which they were landed on coming out of the mine. There were two tubs used by the men in the performing of this work. The tub out of which deceased fell is claimed by appellee to have been about three feet and one inch in diameter, with two to two and a half inches on each side for a bail. When in operation a cable that extended from the engine, over a sheave wheel, was connected with these buckets by a hook. When the bucket would be brought to the top, a truck wider than the opening in the platform would be pushed over the opening and the bucket allowed to rest upon this truck, and when the bucket was ready to descend into the mine the truck would be pulled away. Between the hook and the cable there were three links of the length of about six or eight inches and attached to these was a safety link used for the purpose of pre-

venting the hook from slipping off of the bail of the bucket. The end of the hook was in the shape of a T. and the safety link would be placed over this T. and when the chain was straightened and the safety link over the end of the hook there was no chance for the hook to slip off of the bail of the bucket. There were three shifts engaged at work in the sinking of this shaft. The one with which deceased was connected began work about three o'clock p. m. and worked until eleven o'clock and the usual custom was to come to the top to eat their dinner at about seven o'clock. On the evening in question the men had come up from the shaft and eaten their supper, some of them had returned to their work and the bucket had been sent up for the remainder of the men. It had been set upon the truck and the deceased, John Owsianny, Matthew A. Holcomb and the third man, whose name is not given, got into the bucket preparatory to going down into the mine. After getting into the bucket and, after the cable had been straightened up by the engineer, George Parish, the man who attended to the pushing of the truck to and from over the opening in the platform, together with other duties required of him, discovered that the safety link was not over the end of the hook and called the attention of the men in the tub to this fact, whereupon Holcomb threw his hand on to the hook and said "hoist away." The signal was then given to the engineer and he raised the tub high enough to permit the truck to be moved, which Parish did, and they started to lower the men into the mine, when the tub by some means caught upon the edge of the platform, tipped and threw the men into the mine below, and the deceased fell upon some braces at the distance of about sixty feet from the top, the bucket fell upon him and he was crushed and killed. It was a stormy evening and the place was lighted by two lanterns and the lights in the men's caps.

The evidence under the first, second and third counts of the plaintiff's declaration was excluded from the

consideration of the jury as to these counts and a trial was had upon the fourth and fifth counts of the declaration. The fourth count charges that it was the duty of the defendant to use reasonably safe means to lower the plaintiff's intestate through the platform into the shaft to his working place, and that the defendant carelessly and negligently disregarded its duty in that the opening provided in the platform was not sufficiently large to permit the tub in which the plaintiff was required to be, to pass through said platform, with reasonable safety, and that by reason of such insufficient opening through said platform the tub caught on the edge of the platform or scaffold and careened over and caused the plaintiff to fall to his death.

The fifth count charges that it was the duty of the defendant to use reasonable diligence to see that the safety link was attached before attempting to lower the plaintiff's intestate into the hole to his working place, and that the defendant carelessly and negligently omitted its duty in this regard, and that in consequence thereof when the tub caught on the edge of the platform the hook came off from the bail of the tub and allowed the same to fall into the shaft and cause the death of the plaintiff's intestate.

While many errors have been assigned by counsel for appellant, the ones insisted upon and argued before this court are that the evidence was not sufficient to warrant a verdict for plaintiff; that the deceased was guilty of contributory negligence, also that he knew or by the exercise of reasonable care should have known the conditions and circumstances surrounding and causing his death, and that it is a case of an assumption of risk.

It appears from evidence in this record that the opening in the platform was fifty-two inches in width, and that the bucket, including the bails, was forty-two inches in width; that shortly after they commenced sinking the shaft the bucket caught frequently upon the sides of the platform and to prevent this a follower

extending from one side of the shaft to the other and running in the slides was placed just above the links holding the hook, so as to prevent oscillation of the cable. Some of the witnesses say, however, that after this follower was placed on that the bucket caught upon the edge of the platform a few times; others say it did not. There is no complaint that the appliances furnished by appellant were not reasonably safe, except as to the width of the opening in the platform. The deceased had been at work in this shaft almost from the commencement of the sinking and passed up and down the shaft through the opening in this platform from six to eight times a day, and we are convinced from the facts and circumstances proved in the case that the deceased was familiar with the conditions and knew that if the tub caught upon the platform when the safety link was not attached to the hook that it was liable to career and throw the men out. It further appears from this evidence that while the tub was upon the platform and before the trucks were removed, the attention of the deceased and his associates was called to the fact that the safety link was not over the end of the hook, and knowing that fact Holcomb told the top man to hoist away, in the presence and hearing of deceased, and he made no protest or objections to it. Upon another occasion, prior to this, he started to ascend out of the mine in company with other persons without the safety link being adjusted and the superintendent required them to stop and adjust the link before being hoisted out, and the deceased as well as other men had been frequently warned not to go in and out of that shaft in the bucket without this safety link being adjusted upon the hook, and the deceased certainly knew the purpose for which the safety link was placed there and the dangers liable to result from not adjusting it. It has been repeatedly held that before the plaintiff can recover it must appear from the evidence, and the burden is upon the plaintiff to show: First, that the appliance

was defective; second, that the master had notice thereof or knowledge or ought to have had; and third, that the servant did not know of the defect and had not equal means of knowing with the master. *Swift & Co. v. Gaylord*, 229 Ill. 338; *Goldie v. Werner*, 151 Ill. 551.

In the case of *Swift & Co. v. Gaylord, supra,* it is said: "And in *Armour v. Brazeau,* 191 Ill. 117, the judgment was reversed, and it was held error to refuse an instruction imposing upon the plaintiff the burden of proving the existence of the defect and that it caused the injury, defendant's knowledge, plaintiff's lack of knowledge and of means of knowledge equal to the defendant's, and that plaintiff was in the exercise of ordinary care. The same rule is announced or recognized in other cases.'" The deceased was a man of mature years and experience and we can see no reason why he could not have discovered, in passing up and down the shaft so frequently, the closeness of the tub to the platform, and we think that under the evidence in this record he not only had the opportunity to observe the closeness of the tub to the platform in passing through the hole but that in law he is presumed to have known it and is chargeable with knowledge. It is said in the case of *Elgin, J. & E. Ry. Co. v. Myers,* 226 Ill. 365: "It is also the rule that employee of sufficient age and experience is chargeable with knowledge of the ordinary conditions under which the business is conducted and its ordinary risks and hazards, and will be presumed to have notice of and to have assumed all such risks and hazards which to a person of his experience and understanding are, or ought to be, patent and obvious. If a defect is so plain and obvious to the senses that in the exercise of ordinary care the employee would discover it, and he continues in the employment without complaint and without any assurance by the master that the defect will be repaired or the danger removed, he assumes the risk arising from it." This doctrine is conceded practically by counsel for appel-

lee but he insists that this was a latent defect. We cannot agree with him in this contention. While it may be true as suggested, that the opening was covered by the truck, at times while the bucket was upon the truck, yet when the truck was removed from the hole and he passed up and down the shaft so frequently and as it was open to the men for inspection at all times with nothing to prevent them from seeing it, we certainly do not believe that it was a latent defect, and one that he is not presumed to know.

It is said by counsel for appellee: "That Holcomb was in the act of taking hold of the hook evidently for the pupose of adjusting the safety catch at the time he (Parish) ordered the tub to be hoisted away, what he says himself to be true, even if Holcomb did say, 'Hoist away,' the very fact that he took hold of the hook would indicate to any reasonable man that it was his intention not to hoist away until after he had received the slack sufficient to adjust the hook." We do not understand this to be the testimony of Parish or that such a meaning can be drawn therefrom. Holcomb knew that at the time the rope was straightened that the safety link could not be adjusted without slacking the cable and if he had meant what counsel claims he did, instead of saying "hoist away" he would have given an order to slack the cable. Parish says: "I said a minute ago that Holcomb said "hoist away;" that meant to hoist the bucket, to signal the engineer to hoist the bucket up. You had to hoist it up to roll the truck out. The custom was when they would be ready they would tell me they were ready and some times they would say, hoist up. When they did that I signalled the engineer to hoist up by hallooing to the engineer Harry Wills:"

Counsel for appellee further contend that the servant does not assume the risks of the master's negligence, and refers to the case of *City of Lasalle v. Kostka,* 190 Ill. 135. We do not understand this de-

cision to go to the extent claimed for it by appellee. The doctrine contended for might apply if the servant was working under an imperative order from the master, with assurance of safety, or if the servant had no knowledge of the conditions, but where the servant had knowledge of the defects, then such rule cannot be invoked.    In the case of the *Republic Iron & Steel Co. v. Lee*, 227 Ill. 259, where this very doctrine was being contended for, the Supreme Court says: "Appellee urges, however, that the servant never assumes the risk of defects arising from the master's negligence. In *Browne v. Siegel, Cooper & Co.*, 191 Ill. 226, it is said that even if the master fails in his duty to furnish the servant a place ordinarily safe in which to work, and there are to the knowledge of the servant defects which render the place unsafe, the servant is held to have assumed the hazard, for he cannot go on, with knowledge of the danger, without complaint until he is injured and then hold the master liable."

It is further urged by counsel for appellee that George Parish was a vice principal and had been directed by John Dowell never to send the tub down unless it was fastened; that this became a personal duty of the master and could not be delegated to a servant so as to excuse the master from its performance. We are not able to see how this doctrine would relieve the deceased from his duty to care for himself, in the manner he had been directed to do many times. The master is not required to take greater care of a servant than a servant cares for himself. And even if the superintendent himself had been present and called the attention of the deceased to the fact that the link was not fastened and the deceased then chose to go on in the performance of the work without fastening the link, we do not see how he is thereby relieved from his contributory negligence in not adjusting the link. It is as essential to prove that he was not guilty of contributory negligence and did not assume the risk as it was to prove that the master was guilty of negligence. We do not believe, however, that Parish was

a vice principal. It is claimed that the order of John Dowell for him to adjust this hook constituted him a vice principal. John Dowell was only a boss of the shift and directed its workings; he was not clothed with such power or authority as would authorize him to constitute Parish a vice principal. Parish was employed by the superintednent and received his orders the same as the other men that worked in the shift; his duties were to assist in unloading the tubs, to push the trucks over the hole in the platform, to receive the tubs, to pull away the trucks and allow the men to descend, to adjust the safety link if it was off, to wait upon the several men working in the shaft; bring them tools or whatever they needed or do whatever they directed him to do. It also appears from the evidence that the adjusting of the safety link most always took place at the bottom of the shaft and that the hook was very seldom unhooked from the bail when unloading at the top. The Supreme Court in defining the duties of a vice principal says that he is, "One who performs personal duties of the master which cannot be delegated, such as the duty to provide reasonably safe machinery and appliances and a reasonably safe place in which to work; to provide for inspection and repairing of premises and appliances, and to inform immature, ignorant or unskilled servants of the dangers of the situation. These are obligations for which the law holds the master personally responsible." *Baier v. Selke*, 211 Ill. 517. It is also said in the case of *Mobile & O. R. Co. v. Godfrey*, 155 Ill. 78, after stating the duties of a vice principal substantially as above set forth that, "Almost all other duties are assignable and where the master has complied with the non-assignable duty of using ordinary care in selecting of a servant to whom such duties are intrusted, for an injury occurring through such servant's neglect to another servant the master is not responsible." The appliance, the safety link, was furnished by the appellant; the deceased, together with other members of

the crew engaged in the sinking of this shaft, had been instructed as to its use. The appellee, as well as Parish and the other servants, had been warned to adjust the link when the tubs were in use. The difficulty was not with the appliance but in a failure to adjust it, and we can see no reason why the appellant should be held liable for failure in the performance of this duty, in this respect, any more than a failure to perform any other duty required to be performed by its servants, and do not think the duties required of Parish come within the duties of a vice principal. We are not prepared to hold that under this evidence Parish was constituted a vice principal.

The deceased and his associates in attempting to descend into the shaft without adjusting the safety link were doing so in positive violation of the orders given to them by the master, and it can make no difference what may have been their motives, they had no right to proceed in violation of such orders. *Illinois Steel Co. v. Kimnare,* 100 Ill. App. 208.

It seems to us from a close examination of this record, and the law applicable thereto, that the appellee was guilty of contributory negligence and that the risk incurred by him in going down in the shaft, with his knowledge of the facts and conditions that existed, was clearly an assumed risk and that the appellant is not liable. There are other questions argued by counsel for appellant and appellee, but we deem it unnecessary to prolong this opinion as it appears to us the verdict of the jury is manifestly against the weight of the evidence and that judgment ought not to have been rendered against appellant. The judgment of the lower court is reversed.

*Judgment reversed, with finding of facts.*

We submit herewith a statement of the finding of facts as follows: The deceased was not in the exercise of due care and caution for his own safety, in that he failed to adjust the safety link, or offered to do so,

and failed to make any protest against being sent down in the mine without the link being properly adjusted. The evidence shows that he knew or ought to have known, and could by the exercise of reasonable care have known, of the defects complained of in the plaintiff's declaration, and that in the performance of the work in the manner and under the circumstances it was performed, the deceased assumed the risk.