JOHN CANTWELL *et al.*

*v.*

A. S. WELCH, Receiver.

*Opinion filed October 19, 1900.*

1. LOAN ASSOCIATIONS—*effect of officers' representation that payment of certain amount will mature stock.* Subscribers of the capital stock of a loan association are charged with notice of the provision of the statute requiring payment of installments to continue on each share until the same shall reach maturity value; and this provision cannot be displaced by the representation of the officers of the association that payments for a fixed period shall operate to mature the stock or be accepted as accomplishing that result.

2. SAME—*monthly premiums are properly included in foreclosure decree.* If the by-laws of a loan association provide for the payment of the premium in monthly installments instead of a gross sum, it is proper, where the shares of stock have not attained maturity value, to include in the foreclosure decree the amount of premiums due from the time of default to the date of the decree.

3. TRIAL—*general objection to evidence only raises question of relevancy or materiality.* A general objection to the introduction of a certified copy of a resolution by the board of directors of a loan association authorizing the institution of the foreclosure proceeding, does not raise the point that the secretary's certificate fails to show that he is the keeper of the records and official papers.

*Cantwell* v. *Stockmen's Building, etc. Union,* 88 Ill. App. 247, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

This was a bill in chancery for a decree foreclosing a real estate mortgage executed by the appellants to the appellee union. The appellee union was incorporated May 14, 1890, under the act in force July 1, 1879, and acts amendatory thereof, (Hurd's Stat. 1899, p. 450,) authorizing the incorporation of mutual building, loan and homestead associations. The appellant John Cantwell subscribed for twenty shares, of the par value of $100 each, in the fourteenth series of the capital stock of the union, to be paid, as the by-laws provided, in monthly

installments of $16 as dues. He applied for, and on the 14th day of July, 1891, was granted, a loan in the sum of $2000, to bear interest at the rate of six per cent per annum, payable monthly, in sums of $10 per month, and he also agreed to pay as a premium for such advance loan seven per cent per annum on the amount of the loan, such premium to be paid, according to the requirement of the by-laws, in monthly installments of $11.66, until the said sum so borrowed should be re-paid or the shares of stock fully matured. Said borrower, and Margaret, his wife, to secure the re-payment of the loan, executed a mortgage on the premises in question, and in addition thereto assigned the said twenty shares of stock to the union as further security for the money so borrowed. The appellants met each monthly demand for interest, premium and dues to and including the month of October, 1896, and thereafter failed to meet any of such payments. On August 12, 1898, the bill to foreclose the mortgage was filed. Decree was entered in the circuit court of Cook county foreclosing the mortgage and ordering sale of the premises. An appeal by the appellants to the Appellate Court for the First District resulted in an affirmance of the decree, and the cause comes to this court by the further appeal of the appellants.

R. G. MARRIOTT, (MYER S. EMRICH, of counsel,) for appellants.

GEORGE V. McINTYRE, for appellee.

Mr. CHIEF JUSTICE BOGGS delivered the opinion of the court:

· The statute under the authority whereof the appellee corporation was created and has existence, provides that subscriptions to its capital stock shall be made payable in periodical installments, (not exceeding two dollars on each share,) and that payment of such installments shall continue on each share until the same shall reach matu-

rity value or be withdrawn or retired. Subscribers to the capital stock of associations of this character are held to notice of the provisions of the statute, by which alone the corporation has authority to issue stock or transact its business. The statutory provision that the periodical payment of dues shall continue until the share has reached maturity cannot be displaced by a mere representation or promise of the officers of the corporation that payments at a fixed sum, if paid for a fixed period of time, will or shall operate to mature the stock or will or shall be accepted as accomplishing that result. (*King* v. *International Building Union*, 170 Ill. 135.) The proffered testimony that the secretary of the union said to or promised the appellants that monthly payments in the sum of $37.66 (being dues $16, interest $10 and premium $11.66,) for a period of five and a half years would or should mature the stock and thereby discharge the mortgage debt was properly excluded.

A by-law of the union provided that in the case of non-payment of interest and fines for a period of six months, payment of the principal, interest and fines may be enforced, upon the order of the board of directors, by proceedings at law or in equity against the security. Appellants cite Endlich on Building and Loan Associations, (2d ed. p. 58,) to the effect no forfeiture can be declared by the appellee union except it be done by resolution of the board of directors, and also insist there is no allegation in the bill that the board of directors had declared the appellants to be in default, or had entered an order declaring a forfeiture and directing proceedings to be instituted to foreclose the mortgage, and urge the bill is insufficient to support the decree. This contention can not be maintained. The allegation of the bill is, that default in the making of such payments has continued for more than six months, "and that by reason thereof your orator (appellee) has elected, and does hereby elect, to declare the whole of the sum secured by said note and

mortgage immediately due and payable." The appel-
lants treated this allegation as an attempt, at least, to
allege forfeiture and requisite authority to institute the
action, and made answer thereto as follows: "These de-
fendants, jointly and severally, further answering, deny
that the said complainant corporation has the right to
declare said note and mortgage forfeited, as it has in its
bill alleged, because they say that it is provided by the
by-laws of the said corporation, in section 7 of article 9,
as follows: 'That in case of non-payment of interest and
fines for the space of six months, payment of principal
and interest and fines may be enforced by proceedings
against the securities according to law, upon the order
of the board of directors.' These defendants, jointly and
severally, further answering, say that it does not appear
from the complainant's bill of complaint filed heretofore,
or in the amendment thereof, that said board of directors,
or any of the proper officers of said complainant corpo-
ration, ever authorized or ordered the bringing of said
foreclosure proceedings."

The chancellor correctly regarded the allegations of
the bill and answer as raising, as to this point, an issue
of fact whether the board of directors of the appellee
union had taken the action required by the by-law set
out in the answer, and therefore properly overruled the
general objection preferred by the appellants to the ad-
mission in evidence, at the instance of the appellee, of a
copy of a resolution adopted by the board of directors of
the union directing this proceeding to be instituted for
a decree foreclosing the mortgage, to which copy was
appended the certificate of the secretary of the appellee
union, under its corporate seal, that the same was a true
copy of the resolution adopted by the said board. The
objection to this instrument being general, only raised
questions as to its relevancy as testimony. Under a gen-
eral objection it cannot be urged in this court that the
copy should have been rejected by the circuit court for

the reason the certificate of the secretary appended there-
to did not contain a statement that said secretary was
the keeper of the records and official papers of the cor-
poration, in accordance with the provisions of section 16
of chapter 51 of the Revised Statutes, entitled "Evidence
and Depositions." A general objection to an instrument
offered in evidence raises questions of its relevancy or
materiality only,—not a special objection such as this,
which might have been removed in the trial court had it
been there disclosed. *Buntain* v. *Bailey*, 27 Ill. 409; *Moser*
v. *Kreigh*, 49 id. 84; *Osgood* v. *Blackmore*, 59 id. 261; *Hyde* v.
*Heath*, 75 id. 381; *Johnson* v. *Holloway*, 82 id. 334; *Wilson* v.
*King*, 83 id. 232; *King* v. *Chicago, Danville and Vincennes
Railroad Co*. 98 id. 376; *Gage* v. *Eddy*, 186 id. 432.

The decree debt, as awarded by the chancellor and
affirmed by the Appellate Court, included monthly in-
stallments of both interest and premiums on the sum
borrowed from the date of default to the rendition of the
decree, but denied and excluded fines for the non-pay-
ment of dues, interest and premiums for the like period.
It is insisted the monthly installments for premiums on
the loan should not be allowed after the expiration of
six months after the default of the appellants in making
payments,—that the account as to the premiums should
have been stated by the master as of the date of the
expiration of said six months. Loans made by the union
are but the preference enjoyed by a stockholder to re-
ceive the amount of his stock in advance of maturity.
All stockholders cannot enjoy such preference, and the
privilege, in this case, was determined by offering the
money at public auction to the stockholder who would
bid the highest annual rate of premium for such prefer-
ence. Section 8 of chapter 32 of Hurd's Statutes of 1897,
(par. 85, p. 441,) authorized the course pursued by the
union in this matter. This section authorizes such asso-
ciations to deduct the entire premium in a gross sum, or
to allow it to be paid in proportionate amounts or in-

stallments, as was done in this instance. The consideration for the premium is the right to receive in cash, by way of an advanced loan, the par value of the shares of stock held by a borrower. The by-laws of the appellee union provided this premium should be paid monthly in advance instead of being paid in a gross sum in advance. The bond executed by the appellants, and the mortgage given by them, stipulated for the payment of the premiums until the stock should be matured, the clause in the mortgage being as follows: "And is also conditioned for the additional payment of seven per cent per annum as a premium, to be paid in monthly installments of $11.66, commencing on the last Saturday of July, A. D. 1891, and payable on the last Saturday of each and every month thereafter, said payments of principal, interest and premium to be continued to be paid until said sum of $2000 is fully paid, or until each share of stock in the fourteenth series issued by said union shall have attained the value of $100." The shares of stock had not attained such value at the time of the accounting by the master, and the inclusion of the monthly premiums to the date of the accounting was but to observe the contract and agreement of the parties. Section 6*c* of chapter 32 aforesaid provides that on voluntary settlement and payment of a loan the borrower shall be charged with the full amount of such advance, together with all arrearages, and credited with withdrawal value of his shares. Section 6*b* of said chapter provides the withdrawal value of stock shall be the amount of dues paid on the shares, and such interest as may be fixed by the by-laws. The by-laws of the appellee union allowed five per cent annual interest on stock withdrawal. The master ascertained the withdrawal value of appellants' shares of stock in accordance with the provision of the statute and of the by-laws, and placed the amount thereof to the credit of appellants in the accounting. Payment of the premiums was the consideration for the preference

granted to appellants to enjoy the full face of their stock in advance of its maturity. They secured the preference by bidding a greater premium therefor than their fellow shareholders who wished like preference were willing to give. They expressly agreed to pay such premiums monthly until the stock had reached par value, but failed to keep the agreement. They enjoyed the fruits of the preference until the time of the accounting by the master. Then the withdrawal value of their stock was ascertained and the same credited to them, and it was entirely proper, and but justice to their fellow-shareholders, to charge them with all unpaid premium installments to that date.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*