THE ALLEN B. WRISLEY COMPANY

*v.*

WILLIAM BURKE.

*Opinion filed June 16, 1903.*

1. MASTER AND SERVANT—*when question of assumption of risk is for the jury.* The question of the assumption by a servant of the risk of injury is for the jury, where the evidence tends to show the risk existed only because of the master's negligence in providing the servant a reasonably safe place to work.

2. SAME—*servant not required to make inspection for defects.* A servant is not bound, primarily, to search for latent defects and to

test the safety of appliances furnished by the master, and he is not chargeable with notice of latent defects ascertainable only by special inspection.

3. FELLOW-SERVANTS—*when question of fellow-servants is for jury.* Whether an employee of the plaintiff's master is a fellow-servant of the plaintiff is properly left to the jury, under evidence that the former employed the plaintiff, kept account of his time, gave him orders and acted as foreman when the president of the company was absent.

4. EVIDENCE—*general objection does not raise point of improper cross-examination.* A general objection to admission of evidence raises the questions of materiality and relevancy, only, and not the question of improper cross-examination.

5. SAME—*it is proper to show whether defect was obvious.* Upon the question of the assumption by a servant of the risk of a defective appliance it is proper to show whether such a defect was patent and obvious or ascertainable only by inspection.

6. SAME—*fact that physician was paid to make examination is competent.* In a personal injury case, the fact that a physician who is testifying for the defendant was paid to make an examination of the plaintiff for the purpose of giving testimony may be shown as affecting the weight of his testimony, and it is not reversible error to admit such testimony, even though it incidentally appears that such physician was paid by an accident company.

7. INSTRUCTIONS—*when instruction does not require too high a degree of care.* An instruction for plaintiff in a personal injury case, holding that it was the master's duty "to use *all* reasonable precautions to maintain and keep the sewer cover in a reasonably safe condition," does not impose a higher degree of care upon the master than the law requires.

8. DAMAGES—*what to be considered in estimating pecuniary loss.* In estimating plaintiff's pecuniary loss in case of a personal injury, all the consequences of such injury, future as well as past, which are shown by the evidence to be reasonably certain to result, are to be taken into consideration.

*Allen B. Wrisley Co.* v. *Burke,* 106 Ill. App. 30, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. RUSSELL P. GOODWIN, Judge, presiding.

D. J. & D. J. SCHUYLER, Jr., for appellant.

HENRY M. COBURN, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was an action on the case to recover damages sustained by reason of personal injuries received by the appellee. In the trial court judgment in the sum of $7500 was entered against the appellant company, and the same was affirmed in the Appellate Court on appeal. This is a further appeal to bring the record in review in this court.

The denial of the motion, entered by the appellant company at the close of all the evidence, to peremptorily direct the jury to return a verdict for the appellant company does not raise in this court the question whether the verdict is against the weight of the evidence. That is a question of fact, in the litigation whereof the Appellate Court is the court of last resort. The denial of the motion preserved for review in this court the question whether there was evidence fairly tending to support the appellee's cause of action.

The appellant company was engaged in the business of manufacturing soap in the city of Chicago. The evidence tended to show that the appellee, then of the age of twenty-two years, was employed by one Lockwood, an engineer and foreman of defendant, two or three weeks prior to his injury, which occurred on June 24, 1896, to work in the boiler room of defendant's soap factory in the basement of a building on Fifth avenue, in Chicago; that his duties were to take ashes out of the ash pits from underneath the boilers, assist the firemen, do what he was told to do by the foreman, and at times he was directed to and did siphon, by means of a hose, water which collected in the ash pits into the catch-basin of a sewer located in the boiler room and near the ash pits, and he was instructed how to do this siphoning; that the catch-basin, which was about thirty-six inches in diameter, had a wooden cover made of two pieces of inch and one-eighth pine boards crossed, and had a hole in the

center about twelve inches square, which was used for cleaning out the catch-basin; that this twelve-inch hole had a separate cover made of two boards, the lower one, which fitted into the hole, twelve and the other fourteen inches square, nailed together; that the boiler room was about fifteen feet wide and forty feet long, excluding the space taken up by the boilers, contained six boilers with four ash pits, and was lighted by five windows facing an alley to the east, the windows being about three feet wide and between seven and eight feet high, and also by three gas jets; that at the place where the catch-basin was, the light was poor—not sufficient to see the condition of the catch-basin cover without a careful examination; that it was daily or oftener necessary to siphon the water from the ash-pits into this catch-basin, and in order to do so the lid or covering over the hole in the center of the basin cover had to be removed, a hose placed, one end in the ash pit and the other in the catch-basin, by means of which the water was taken from the ash pit into the catch-basin and thence ran away through the sewer; that the water in the ash pits was hot and steam escaped into the catch-basin, keeping the water therein always hot, so that the cover of the catch-basin became water and steam-soaked, and it became soft and disintegrated by the steam, and a new cover had to be put on every four to six weeks, but this softening of the catch-basin cover was not known to plaintiff, and it does not appear that he had any experience or knowledge in that regard; that the catch-basin cover was on a level with the boiler room floor, and plaintiff's duties in removing the ashes and siphoning the water from the pits into the catch-basin made it necessary for him to pass, from time to time, many times daily, very near the catch-basin, and at the time in question, while going about his duties, he stepped upon the cover of the catch-basin, which was enveloped by escaping steam, and the part over the twelve-inch opening gave way and plaintiff's foot and

leg passed through the opening into the hot water in the basin, whereby his right ankle and leg, almost to the knee, were scalded. The evidence tended to show that the catch-basin cover had been in a dangerous condition for a week, at least, before the accident, and that this was known to defendant's foreman, who had previously asked defendant's president to allow the wooden cover to be replaced by a stone cover with an iron plate on it.

The reasons advanced by the appellant company in support of the assignment that it was error to deny the motion will be considered in the order as discussed in the brief of counsel.

The motion should not have been granted on the ground the appellee had equal means of knowledge as had the master that the cover of the catch-basin was in an unsafe and defective condition. The evidence showed the master had actual knowledge thereof. Counsel for appellant contend it appeared from the proof that the appellee passed, from time to time, many times a day, over or near the cover; that it was his duty to observe the condition of the cover, and that he was chargeable, as matter of law, with notice or knowledge of the condition of the cover. A servant will be presumed to have notice of risks which to a person of his experience and knowledge ought to be patent and obvious, and also such as by the exercise of ordinary care he can see and understand. (20 Am. & Eng. Ency. of Law,—2d ed.—114, 115.) The evidence tended to show that the light was insufficient to enable any one to see the cover with any degree of distinctness; that the insufficiency in the cover arose, in part, from the effect of steam upon the wooden boards of which it was composed, and that the appellee had no knowledge or notice that the wood would become soft and disintegrated by the steam, and that this soft or disintegrated condition of the wood was not noticeable except upon careful inspection of the cover. Clearly, whether he should be deemed chargeable with notice

was a question óf fact for the jury, and not one of law. The injury did not arise from a peril which was ordinarily incident to the work appellee was employed to do. The evidence tended to show it arose from the negligent failure of the appellant company to provide a safe cover for the catch-basin, though notified of the dangerous condition of the cover in use. The law could not, in such state of case, declare the servant assumed the risk, which existed only because of the negligent omission of the master to comply with its duty to provide the servant with a reasonably safe place in which to perform its work.

Lockwood exercised many of the duties and powers of a master. He employed the appellee, kept account of the time he worked, gave him directions and orders, and acted in the capacity of foreman when the president of the company was not present. The court properly declined to declare that, as a matter of law, it appeared said Lockwood and appellee were fellow-servants. The determination of the relation of these two employees of the appellant company was a question of fact for the action of the jury.

Counsel for appellee, on cross-examination of said Lockwood, who was produced as a witness for the appellant company, asked him, "You knew when you put him (appellee) to work, from your conversation with him and from what he did, that he had little or no experience in this line?" Counsel for the appellant company interposed a general objection, which was overruled, and the witness answered, "Yes." It is urged the objection should have been sustained because, first, it was not cross-examination; second, Lockwood was a fellow-servant with the plaintiff, and his knowledge as to what the plaintiff knew could not in any way be binding upon the defendant; and third, there is nothing to show that the witness knew what experience the plaintiff had had in this or any other kind of work. That the question was not proper cross-examination is not raised by a merely gen-

eral objection. A general objection raises the question of the relevancy and materiality only. (*Cantwell* v. *Welch,* 187 Ill. 275.) Whether Lockwood bore the relation of fellow-servant to appellee "when he put him to work" was a controverted point of fact, and the court could not refuse to permit the question to be answered on that ground. The question was propounded for the purpose of proving that Lockwood knew, "when he put" appellee "to work," that he (appellee) had little or no experience in that character of work. It could not, therefore, be a good objection to the question that it had not been already proved that Lockwood knew what experience the appellee had had in the work.

In the further course of the same cross-examination the following questions were propounded to said Lockwood and answers made, to-wit:

Q. "There was not anything about the sewer hole or about the cover to indicate when it was getting too weak for a person to step upon, was there?

A. "Nothing, only by examination; they had to take it up and look at it.

Q. "And make an inspection of it?

A. "Yes, sir.

Q. "Now, it would require, would it not, a personal inspection of this cover to ascertain whether or not it was in a disintegrated condition?

A. "It would; yes, sir."

These questions and answers were objected to and exceptions taken. In support of these objections it is urged that they called for the opinion of the witness as to the condition of the cover, and also whether, in his opinion, the condition of the cover could be ascertained only by an inspection thereof. The answers are not expressions of opinion held by the witness. The answer to the first is the statement of fact that the softening or disintegration of the wooden cover was not visible as the cover lay in its place over the catch-basin. The second

answer is but a repetition of the first.   In the determination of the question whether the appellee was chargeable with notice or knowledge of the defective condition of the cover it was proper for the jury to know whether the defects in the cover were patent and obvious.   The servant is under no primary obligation to investigate for latent defects and test the fitness and safety of the place, fixtures or appliances provided him by the master. He may assume that they are fit and safe, and though the circumstances may be such a servant is chargeable with knowledge of such defects as are patent and obvious and of such defects as in the exercise of ordinary care he ought to have knowledge of, the servant is not to be deemed as having notice or knowledge of such defects and insufficiencies as can be ascertained only by investigation and inspection, for the purpose of ascertaining that there is no danger.   (*Armour* v. *Brazeau*, 191 Ill. 117; 20 Am. & Eng. Ency. of Law,—2d ed.—121, 122.) In *Armour* v. *Brazeau, supra,* we said (p. 125): "While there is no absolute duty to keep appliances in safe condition, there is a duty to use reasonable care to keep them fit, and this duty may require inspection at reasonable intervals and the employment of such tests as will reveal the condition of the machinery or appliances.   This duty of inspection rests upon the employer and not upon the employee, and depends upon the character of the machine or appliance, since ordinary care may require an inspection oftener in one case than in another."

The statement of the witness Kaiser that he had "probably" seen the appellee taking off the wooden cover was properly stricken out.   It was competent for the witness to testify to that which he had seen and as to his best recollection as to any fact, and this he was given ample opportunity to do.   His statement as to mere probabilities was properly excluded.

An objection was interposed and sustained to a question propounded by counsel for the appellant company

to Alfred Hussey, a witness in its behalf, but in answer to other questions to the same witness that which was sought to be brought out by the excluded question was fully disclosed. Hence no injury was occasioned by the ruling, even if it was erroneous, which we do not concede or decide.

In the cross-examination of a physician who testified in behalf of the appellant company as to the condition, physically, of the appellee soon after the injury was received, it was developed that the physician had been employed to make the examination for the purpose of becoming a witness in the case, and had been paid for his services in so doing. The fact the physician had been engaged and paid to make the examination and for the purpose of giving testimony in the case was proper for consideration, as bearing upon the weight and value of his testimony. (*Jones* v. *Portland*, 88 Mich. 64.) The fact that in developing the proof that the witness was employed and paid to make the examination it incidentally appeared he was paid by an accident company does not constitute error demanding the reversal of the judgment.

The criticism preferred against instructions Nos. 2 and 4 given for appellee need not be discussed in view of what has been said hereinbefore as to the relative duties of master and servant. There is no error in either instruction.

Instruction No. 3, granted to appellee, advised the jury it was the duty of the appellant company "to use all reasonable precautions to maintain and keep the sewer cover in a reasonably safe condition." The argument of counsel is, that "reasonable precautions" was the measure of the duty of the appellant company, and that to require "all reasonable precautions" is to demand a higher degree of care or caution than the law requires. If it is the duty of the master to use reasonable precaution, may he omit some act of precaution, reasonable or ordinary, and still perform his duty to his servant? If he may not,

then he must use all reasonable precautions. No higher degree of care or caution is necessary to be exercised under the instruction than reasonable care and caution.

There is no just ground of complaint as to the fifth instruction given at the request of the appellee. This instruction advised the jury that if, "under the evidence and instructions of the court, the jury find the defendant guilty, then in estimating the plaintiff's damages it will be proper for the jury to consider the effect of the injury in future upon the plaintiff, if any is shown by the evidence in this case; the use of his foot and leg; his ability to attend to his affairs generally, in pursuing any ordinary trade or calling, if the evidence shows that these will be affected in future; and also the bodily pain and suffering he sustained, if any, and all damages, present and future, if any, which, from the evidence, can be treated as the necessary and direct result of the injury complained of." The rule, as we understand it, is, that in estimating the pecuniary loss in such cases as the one at bar, all the consequences of the injury, future as well as past, which are shown by the evidence to be reasonably certain to result from the injury, are to be taken into consideration. *Lake Shore and Michigan Southern Railway Co.* v. *Johnsen,* 135 Ill. 641; 3 Sutherland on Damages, (2d ed.) sec. 944; 8 Am. & Eng. Ency. of Law, (2d ed.) p. 643.

It is complained that instructions Nos. 5 and 6 asked by the appellant company were refused. The principle which it is contended it was designed by these instructions to convey to the jury was clearly declared in instructions Nos. 15 and 20 given to the jury at the request of the appellant company. It was unnecessary to reiterate the proposition.

The judgment appealed from must be and is affirmed.

*Judgment affirmed.*