# George E. Quaite, Appellee, v. Swift & Company, Appellant.

1. MASTER AND SERVANT—*when servant does not assume risk.* Conceding that generally a servant assumes the risks ordinarily incident to his employment and obvious and known dangers, yet the law does not imply that he has notice of dangers not obvious, or those arising solely out of extraordinary circumstances.

2. MASTER AND SERVANT—*right to assume that place and appliances are safe.* In the absence of actual knowledge of danger a servant has a right to assume that the place and appliances furnished him are safe and suitable for the business engaged in.

3. MASTER AND SERVANT—*obligation on servant to inspect for defects.* A servant is under no primary obligation to investigate for latent defects and to test the place and appliances and is not deemed to have notice or knowledge of defects ascertainable by inspection to discover danger.

4. MASTER AND SERVANT—*instructions.* An instruction in an action for personal injuries does not exclude the defense of assumed risk, though it is not directly mentioned, where it submits to the jury the question whether or not the danger was known to the plaintiff or could have been discovered by him in the exercise of ordinary care.

5. INSTRUCTIONS—*when refusal of correct instruction not error.* Refusal of a correct instruction is not error where the principle is fully covered by other instructions.

6. DAMAGES—*excessive.* Though a verdict for $2,750.00 is not entirely satisfactory it will not reverse where the plaintiff who was 38 years old and earning $2.50 a day was struck on the head by a falling weight, whereby he was confined for some time and his spine, side, and leg were so affected that he walked with a crutch and complete recovery would require a year.

7. MASTER AND SERVANT—*questions for the jury.* In an action for personal injuries received when a weight fell on plaintiff's head in a place where he was stationed by a foreman to pry the ends of a drawbridge loose, it is for the jury to say from the evidence, whether the danger was obvious or known to him, or whether it was an accident, or caused by the negligence of the foreman.

8. WITNESSES—*cross-examination.* In an action for personal injuries, by one injured by the falling of a weight from the gate of a drawbridge, it is no abuse of discretion to exclude cross-examination of defendant's foreman by the defendant as to why he weighed one of the gates, though on direct examination he testified that he had weighed it.

9. EVIDENCE—*when refusal to exclude not error.* Where a rule is entered at plaintiff's request excluding witnesses from the court room, it is not error to refuse to exclude the testimony of a witness for plaintiff who was in the room while other witnesses testified, where the facts testified to were few in number, fully covered by other testimony, and concerned matters not controverted.

Appeal from the City Court of East St. Louis; the Hon. W. M. VANDEVENTER, Judge, presiding. Heard in this court at the March term, 1912. Affirmed. Opinion filed October 7, 1912.

C. E. POPE, for appellant.

D. J. SULLIVAN, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

No evidence was introduced in this case by appellant, and there is no controversy as to the facts, which are in substance as follows:

Appellant owned and operated a packing plant in St. Clair county, Illinois, and among other buildings connected therewith, were two, known as the pork dock and hog house, in front of each of which was a platform about 4½ feet high, with a twenty-five foot roadway between them. Appellant desired to connect these two platforms by means of a double draw-bridge, so that when the bridges were down, trucks could pass over the roadway on them at the same elevation as the platforms, and when it was raised teams and cars could go back and forth between the two buildings. Appellee, for about a week prior to July 31, 1911, had been engaged with his foreman, Meyers, and others, in making and erecting this draw-bridge, which was constructed in the following manner:

Two posts, ten inches square, were set in the middle of the roadway some eight feet apart. These were set in concrete six feet below the surface and were about sixteen feet high. A cap piece went across the tops of the posts to each end of which was attached a

sheave wheel. Two steel shafts were attached by bearings to the opposite sides of the up-rights. These shafts were the axles on which the two sections of the draw-bridge were to run and were attached to the uprights on a level, with the platforms, so that when the sections were down, one end of each was held by the steel shaft and the other rested on the platform, and when raised the ends of the platforms extended towards the top of the uprights. Each section was a little over twelve feet long and six feet wide and was composed of oak timbers $3\frac{1}{2}$ inches thick, and when the two were down they formed a continuous passageway from one platform to the other. As a means of raising these sections, cables were attached to the ends next to the platforms and then passed over the sheave wheels and down the sides, ending in iron rods, designed to hold weights to counterbalance the weight of the sections when being raised or lowered. The weights used thereon were large scale weights with a slot in one side, so that they slipped on and around the rod and were not intended to be used permanently on the structure, but were procured and used for the purpose of determining the amount necessary to counterbalance the weight of the gates, so that a permanent counterbalance could be made of the proper weight. On the date aforesaid, appellant's foreman attempted, with appellee and other workmen, to test the draw-bridge, to see if it would work properly. One section was lowered and the other one started down, when it was found that the ends of the timbers of the one being lowered struck the ends of the timbers in the section already down, causing it to stop. The foreman ordered appellee to get a pinch-bar and assist him to pry the ends apart. While they were on the bridge, pulling on the bar, the foreman directed other men to pull the gate down, when the section suddenly came loose and descended with such force and so quickly as to jerk the cable up against the sheave wheel, and jar one of the weights, weighing $19\frac{1}{2}$ pounds, off

the rod. The falling weight struck appellee on the back of the head and neck, rendering him unconscious, so that he had to be taken to a hospital, where he remained four days, when he was removed to his home, where he was confined for sometime. He suffered great pain and his spine, right side and leg became affected so that he walked with a crutch at the time of the trial, some months later, and the evidence showed that his complete recovery would take a year or more.

Appellee at the time he was injured was 38 years of age, and could earn $2.50 a day.

The first count of the declaration charged appellant with negligence in ordering appellee to work in a dangerous place, which danger was known to appellant or should have been known to it, by the exercise of ordinary care, but was unknown to appellee and could not have been discovered by him by the exercise of ordinary care. The second count charged appellant with negligence in failing to use ordinary care to furnish appellee a reasonably safe place in which to work and to furnish him reasonably safe and suitable equipment on said draw-bridge, and in negligently and carelessly placing certain weights on the rod, at the end of the cable, which were not of sufficient weight to properly retard the descent of the gate, and in failing to use reasonable care to have said weights fastened to prevent their falling when suddenly jerked by an abrupt or rapid descent of the gate, due to the inefficiency of such counterweight.

There was a verdict followed by a judgment for appellee, for $2,750.00. Appellant has brought the case to this court for review, insisting that the verdict is not sustained by the evidence, that the court erred in its rulings in regard to the instructions and evidence and that the amount of the verdict was excessive.

In regard to the evidence and the insufficiency of the same, to support the verdict, the claim of appellant is that it shows a state of facts, under which appellee must be held to have assumed the risk and also that

the injury was the result of an accident. While the employe, as a general rule, is held to have assumed the risks ordinarily incident to his employment, and also all obvious and known dangers, yet the law does not imply that he has notice of dangers or perils not obvious to the senses and arising solely out of extraordinary or exceptional circumstances. Pittsburg Bridge Co. v. Walker, 170 Ill. 550.

The employe also has a right, in the absence of actual knowledge of danger, on his part, to assume that the place and appliances furnished him, by his master, are safe and suitable for the business in which he is engaged. Whitney v. O'Rourke, 172 Ill. 177.

It is further the rule of law, that the servant is under no primary obligation, to investigate for latent defects, and test the fitness and safety of the place, fixtures and appliances, provided him by the master, and he is not deemed to have notice or knowledge of such defects and insufficiencies as can be ascertained by investigation and inspection, for the purpose of ascertaining there is no danger. Wrisley Co. v. Burke, 203 Ill. 250.

In this case, appellee was at the time he was injured told where to stand by his foreman, and was acting entirely under his direction. He is not charged with doing, nor does the evidence show that he did any act of negligence, contributing to cause his injury. It does not appear to us that the danger to which he was subjected, was either known to him, nor was it so open and obvious, that he should have known of it by the exercise of ordinary care. The evidence strongly tended to show that the fall of the weight, which injured appellee, was not the result of a mere accident, but was caused by lack of care and proper precaution on the part of appellee's foreman, in charge of the work, but at any rate these questions were questions of fact for the jury and their verdict had no lack of evidence to support it.

Appellant complains of the second instruction given

for appellee, because, while laying down correctly the rule of law governing appellee's theory of his right of action, it neglects to mention appellant's defense of assumed risk. While the instruction in question did not directly mention the question of assumed risk, yet it did submit to the jury the question whether or not the danger was known to appellee, or could have been discovered by him in the exercise of ordinary care. This instruction, therefore, does not exclude the defense of assumed risk, as a servant does not assume a peril of which he has no knowledge, and of which he cannot have knowledge by the exercise of ordinary care, and therefore, cannot be held to be erroneous, and especially is this so in view of the fact that appellant's instructions covered the doctrine of assumed risk.

Appellee's third instruction, which is criticised by appellant, undertakes to inform the jury as to what does and does not constitute an accident, in law, as applied to the facts in this case, and appears to us to state a correct rule.

Appellant's fifteenth instruction related to the effect of knowledge of the danger on the part of appellee, upon his right of recovery and stated substantially a correct principle of law, but there was no error in refusing the same, for the reason that the same principle was stated and fully covered by other instructions given for appellant.

In regard to the evidence, appellant complains that while appellant's foreman, Meyer, testified that he weighed one of the gates and the amount it weighed, yet he was not permitted, on cross-examination, to tell why he weighed it, and his statement that appellee was present at the time was excluded. The court did not abuse its discretion in its rulings in this regard, as the evidence sought to be elicited by appellant was not, strictly speaking, cross-examination, and could readily have been elicited by appellant by making the

foreman its own witness.  Objection was made by appellant, in the court below, to the admission of the testimony of the witness, McGee called for appellee, because, while, at the request of appellee a rule had been entered excluding all witnesses from the court room, yet it appeared that McGee had been in the court room while other witnesses for appellee had testified. The court might well have excluded the testimony of this witness, yet it was not error to refuse to do so, as the facts to which he testified were few in number, fully covered by the testimony of the other witnesses, and concerned matters concerning which there was no controversy.

We think the most serious question raised by appellant is that which concerns the amount of the verdict.  We have, however, considered this matter carefully, and while the amount allowed appellee is not wholly satisfactory to us, considering the extent of his injuries as shown by the proofs, yet we cannot say that the amount is so excessive as to demand a reversal of the judgment solely on that account.  The judgment of the trial court will accordingly be affirmed.

*Affirmed.*