(No. 29738.—

JOHN H. JOHNSON *et al.*, Appellants, *vs.* GRENDEL F. BEN-
NETT, Exr., *et al.*, Appellees.

*Opinion filed November 20, 1946.*

SNAVELY & MILLER, of Marshall, for appellants.

CASLON K. BENNETT, SAMUEL M. SCHOLFIELD, and GRENDEL F. BENNETT, all of Marshall, for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Appellants, John H. Johnson, Clara Lee Seyerns, Ella Mae Young, Frances L. Nelson and Joseph E. Nelson, filed their complaint on July 19, 1945, in the circuit court of Clark county, to set aside an instrument in writing purporting to be the last will and testament of Lloyd B. Johnson, deceased. The complaint alleges the instrument is not the last will and testament of the decedent for the reason that the said Lloyd B. Johnson, at the time he executed it, was of unsound mind and memory and did not have the mental capacity or power to make a will, and did not understand the nature or extent of his property or the natural objects of his bounty. It is also alleged that at the time of the execution of the instrument he was under undue influence and control from the arts and fraudulent practices of defendants Bertha M. Chapman and Belva H. Johnson, which deprived him of his free agency and destroyed his freedom of will. A jury was impanelled and at the close of the evidence offered by and on behalf of the appellants a motion was made by appellees, Grendel F. Bennett, executor of the estate, and Bertha M. Chapman and Belva H. Turner, beneficiaries under the will, for a directed verdict in their favor and to find the will introduced in evidence to be the last will and testament of

Lloyd B. Johnson, deceased. The court sustained appellees' motion and from this judgment appellants appeal to this court.

The facts are substantially as follows: Lloyd B. Johnson, a resident of Marshall, Illinois, in Clark county, was killed in an automobile accident on October 31, 1944, leaving him surviving John H. Johnson, Clara Lee Severns, Ella Mae Young, Frances L. Nelson and Joseph E. Nelson, his only heirs-at-law and next of kin. He left real and personal estate of the estimated value of $50,000. On July 31, 1944, he executed an instrument purporting to be his last will and testament, which was admitted to probate on November 28, 1944. Letters testamentary were issued to Grendel F. Bennett, as executor. No appeal was taken from the order of probate and Grendel F. Bennett is now acting as such executor.

Lloyd B. Johnson had secured a divorce from his wife, Belva H. Johnson, and, on the same day, July 31, 1944, after having secured the divorce, made a will leaving his property to Bertha M. Chapman, his foster mother, who had raised him since he was a small boy about six years old, and Belva H. Johnson, his former wife, share and share alike.

The first question involved in this appeal concerns the correctness of the action of the trial court in sustaining appellees' motion for a directed verdict. Motions for a directed verdict or a judgment notwithstanding the verdict in will contest cases are governed by the same rules which govern such motions in actions at law. The only question in such a case is whether there is any evidence in the record tending to prove the allegations of the complaint. The party resisting such motion is entitled to the benefit of all the evidence favorable to him, and the only question, on review, is whether there is any evidence tending to prove the allegations in the complaint. (*Ryan* v. *Deneen,* 375 Ill. 452; *Ginsberg* v. *Ginsberg,* 361 Ill. 499.) If no evidence

tending to prove the allegations of the complaint was introduced, or if but a bare scintilla of evidence has been adduced by the plaintiff, the court should allow such a motion. (*Ginsberg* v. *Ginsberg,* 361 Ill. 499; *Libby, McNeill & Libby* v. *Cook,* 222 Ill. 206.) The question presented by the appellees' motion was whether the appellants had adduced any evidence fairly tending to prove either the allegation of undue influence or that of want of testamentary capacity.

Appellants contend that as Lloyd B. Johnson was told by his wife some three or four months prior to his securing a divorce that she was in love with one Earl Turner, who had been in their home numerous times, such fact, coupled with the fact that she concealed from her husband her intention to marry Turner, and her later concealment of such marriage, raised a presumption of mental turmoil regarding her actions; and that as the deceased, Lloyd B. Johnson, had secured a divorce on the grounds of extreme and repeated cruelty, coupled with the circumstances surrounding the accident in which he was killed, such facts are not indicative of normal mental condition. We do not believe such facts as shown by the record, together with all reasonable presumptions and inferences to be drawn therefrom, would tend to establish the allegations of the complaint charging mental incapacity.

Appellants cite the case of *Tidholm* v. *Tidholm,* 391 Ill. 19, and other cases, stating that "Where the evidence, taken in its aspects most favorable to the contestant, together with all reasonable presumptions and inferences to be drawn therefrom, tends to establish the allegations of his complaint, the issue should not be withdrawn from the jury." There can be no question about this being a correct proposition of law. However, on the question of mental capacity to execute a valid will, we find no evidence in the record which would indicate the testator did not have sufficient mental capacity to make due execution of the instrument

in question. This court said in the case of *Quathamer* v. *Schoon,* 370 Ill. 606, quoting the rule as announced in the early case of *Francis* v. *Wilkinson,* 147 Ill. 370, "that where a man has sufficient mental capacity to transact ordinary business and act rationally in the ordinary affairs of life, he has sufficient mental capacity to dispose of his property by will." And further, quoting from the case of *Forberg* v. *Maurer,* 336 Ill. 192, "It is said that a person who is capable of transacting ordinary business is capable of making a valid will, and the strongest evidence of testamentary soundess of mind and memory is positive testimony that he transacted his ordinary business intelligently." Such testimony was clearly in the record and no witness testified that testator was not able to transact ordinary business.

About three months after the execution of the will the testator was killed in an accident in which the vehicle he was driving ran into the rear of a truck and it is contended that the peculiar accident is not indicative of a normal mental condition. The evidence does not reveal any particular unusual circumstances in accidents of this sort, and even so, we hardly see how any reasonable inference could be drawn as to his mental incapacity in making a will some three months before.

It is next urged that undue influence was used in securing the execution of the will, and the complaint charges that defendants Bertha M. Chapman and Belva H. Johnson unduly influenced the testator. We have examined the record and do not find that either of these parties had, in any way, induced the testator to execute any will. The evidence, of course, reveals that Belva H. Johnson concealed in many ways her marriage to Earl Turner, but she had been perfectly frank in telling the testator, months before he obtained the divorce and made the will, that she was in love with Turner. It was also shown by the evidence that after her divorce and marriage to Turner she often called Johnson on the telephone, came back and

visited with him, sometimes remaining and doing some of his housework; and while all of this might be considered as conduct not to be approved of, we see no evidence of undue influence. The will was made prior to the happening of these incidents and was made at the time when Johnson was aware of her mental state pertaining to him. He secured a divorce and immediately thereafter called on his lawyer for preparation of a will. The evidence reveals that testator went down and secured his own witness to the instrument. Neither of the beneficiaries of the will was present when testator directed his will to be made and there was no evidence introduced that would, in any way, indicate that either of the women ever knew, until the testator's death, that he had made a will making them beneficiaries. The evidence shows that at the time he executed the will he stated to his attorney drafting the will that he wanted his property to go to Mrs. Chapman, who had raised him since a small boy and had been his foster mother, and that the remainder of his property should go to Belva, as she "didn't have anything much;" that some of his other relatives he did not get along with and others had sufficient property and therefore he did not desire to leave them anything. From the record we do not find any evidence of undue influence.

Appellants further contend there was a fiduciary relationship existing between Belva H. Johnson Turner and the testator and that she was the principal beneficiary under the will; that under the facts there was a *prima facie* showing of undue influence which entitled appellants to a verdict. It is urged by appellants that Belva H. Johnson, as one of the chief beneficiaries, and Grendel F. Bennett, as executor, stood in position as fiduciaries and in position to gain under the will although neither was the natural object of Lloyd B. Johnson's bounty, the plaintiffs in the contest being the only relatives, heirs and next of kin.

Appellants contend it has been held repeatedly in Illinois, that "Where a fiduciary relation exists between testator and a devisee who receives a substantial benefit from the will, and where the testator is the dependent and the devisee the dominant party, and the testator reposes trust and confidence in the devisee, and where the will is written, or its preparation procured by that beneficiary, proof of these facts establishes *prima facie* the charge that the execution of the will was the result of undue influence exercised by that beneficiary, and this proof, standing alone and undisputed by other proof, entitles the contestant to a verdict." In support of this proposition, appellants cite the case of *Tidholm* v. *Tidholm,* 391 Ill. 19.

As to this being the law there can be no doubt. However, the facts as presented in the *Tidholm case* are entirely at variance with the facts in the instant case. In the case cited, August Tidholm was 86 years old at the time he executed the will. The complaint there charged that at the time of the execution of the instrument he was under undue influence, domination and control of his daughter, which deprived him of his free agency and destroyed his freedom of will. The answer in that case admitted that Tidholm sustained a very close relationship with his daughter, the beneficiary, reposing great confidence in her and entrusting his business and confidential affairs into her hands, and had become more or less dependent upon her. Further, his daughter had lived with him her entire life. One of the outstanding phases of the cited case was the fact that the evidence revealed that the daughter took her father from his home where she lived to an attorney to have his will executed and the attorney was told by the daughter that her father wanted to make a will. At the time of making the will the father asked his daughter to put down the names which she did, and when the attorney stated that he could have the will ready the next day, the

daughter stated she would rather have it sooner, that he agreed to have it ready that same afternoon and the father and daughter appeared at the office of the attorney that afternoon where the will was executed in the presence of the appellee and the witness. In the instant case no showing was made that the beneficiary procured the execution of a will, or knew anything about it being executed, or knew anything about deceased making the will, or that Belva H. Johnson was the dominant party. He was the one who secured the divorce and later executed the will in her favor. At that time there did not exist the relationship of husband and wife. As heretofore set out in this opinion, the testator specifically stated why he was making the will to the beneficiaries and why he did not desire appellants to partake of his bounty. To further contend that because the attorney who drew the will was named executor there would be some inference of undue influence on his part in the execution of the will is hardly tenable. The evidence discloses in this case that the attorney was simply following instructions as to the preparation and execution of the testator's will.

Appellants next contend that the verdict entered was not the verdict of the jury and that the court committed error in giving a peremptory instruction and in not permitting the jury to return a verdict, in the absence of the jury's refusing to return a verdict. The record discloses that at the conclusion of all the evidence for the appellants the appellees presented a motion for a directed verdict and tendered therewith a written instruction and form of verdict. It is insisted the trial court entered a verdict without submission of the question to the jury. The record discloses that at the close of appellants' testimony the appellees moved the court to direct a verdict in their favor and to find the will in evidence to be the last will and testament of Lloyd B. Johnson, deceased, and submitted thereto

the appropriate form of a verdict. The court therefore instructed the jury to find the issues accordingly and entered up the verdict it had directed as follows: "The jury finds the issues in this cause for the defendants, and finds that the Will in evidence is the Last Will and Testament of Lloyd B. Johnson, deceased." The rendition of the verdict by the jury as directed is a mere formality, the decision, in effect, being one of law controlled by the court. Whenever a motion to direct a verdict is made, judicial duty devolves upon the trial judge to decide the matter and determine whether, from the facts and circumstances of the case and reasonable inferences to be drawn therefrom, there is any reasonable basis for any verdict other than one in favor of the moving party. The court had taken the consideration of the case from them and there was nothing for them to do except follow the instruction.

It was held in the case of *Kinser* v. *Calumet Fire Clay Co.* 165 Ill. 505, that a peremptory instruction to find for the plaintiff was, in effect, taking the case from the jury. When the court directs a verdict an issue of law is raised on the whole case, and there is no fact for the jury to find. When the court directs a jury as to the verdict to be returned, it is not necessary that a verdict be actually written out and signed by the jury and returned in the court, it being entirely within the control of the court and a question of law with which the jury has nothing to say. The question involved is whether or not the court erred as a matter of law in giving the instruction. As this was a question of law it did not err in entering up the verdict which it had directed.

The last contention of appellants is that the court erred in excluding the decree of divorce, telephone bills, checks, long distance toll tickets and testimony with regard to marital estrangement caused by Earl Turner. After the decree of divorce had been properly identified it was offered

in evidence by appellants. On this offer the court sustained a general objection. This, of. course, presented the question as to whether or not it was material to the issues before the court. Specific objection to evidence must be made in all instances where the objection, if specifically pointed out, might be obviated or remedied. Such objection must be specific so as to afford the adverse party an opportunity to make correction. (*Illinois Iowa Power Co.* v. *Rhein,* 369 Ill. 584.) However, a specific objection to the admission of evidence is unnecessary where it is manifest that the offered proof has no probative value whatever. The general objection raises the question of relevancy and materiality, only. (*Wrisley Co.* v. *Burke,* 203 Ill. 250; *Cantwell* v. *Welch,* 187 Ill. 275.) Under the issues here of mental incapacity or undue influence we hardly see how the divorce decree would present any facts indicating the existence or nonexistence of such condition.

We have examined the record pertaining to the many telephone calls which apparently preceded Earl Turner's visits to the home of Johnson, as well as other questions pertaining to such visits, and do not find that the court erred in sustaining an objection to their admissibility.

We have carefully gone over the evidence in this case and are of the opinion there was no evidence in this record fairly tending to prove, either that Lloyd B. Johnson, at the time he made his last will and testament, lacked testamentary capacity, or that the will was procured by the exercise of undue influence.

For the foregoing reasons, the court did not err in sustaining the motion for a directed verdict, and the decree is therefore affirmed.

*Decree affirmed.*