GRAZIELLA CASCIOLA, Plaintiff-Appellant, *v.* SAMUEL C. GARDNER, Defendant-Appellee.

First District (1st Division)   No. 79-2355

Opinion filed July 14, 1980.

Ernest T. Rossiello, of Chicago, for appellant.

Douglas & Brewer, of Chicago (Lloyd P. Douglas and Donald R. Brewer, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Graziella Casciola (plaintiff) obtained leave to appeal from an order granting a new trial in plaintiff's action for personal injuries (Ill. Rev. Stat. 1979, ch. 110A, par. 306), against Samuel Gardner (defendant). A jury awarded plaintiff $25,000 in compensatory damages.

In this court, plaintiff urges the trial court abused its discretion in granting defendant a new trial because defendant did not object to expert testimony offered by plaintiff and defendant did not raise this objection until his amended post-trial motion.

Defendant urges plaintiff has failed to file a complete record under Supreme Court Rule 306(b) so that it is impossible for this court to determine whether the trial court abused its discretion in granting a new trial; the trial court determined the trial was unfair even though no objection was made by defendant to the prejudicial testimony and the testimony of the expert was prejudicial.

The record before us shows Harrison Street runs east and west. At its intersection with Morgan Street, it is four lanes wide with two lanes eastbound and two westbound. There is a lane wide tree-lined median between the east and westbound lanes. The median narrows on both sides to make room for left turn lanes.

Plaintiff testified, through an interpreter, that on December 19, 1974, at approximately 4:15 p.m., she was walking home from work with a friend. They were about to cross south from the north curb of Harrison, 120 feet west of the intersection with Morgan. Plaintiff and her friend looked at both sides of the street. They saw no traffic approaching from

the left. They crossed one lane and were about two or three steps from the median when plaintiff was struck by a vehicle. Plaintiff's friend escaped injury. Plaintiff further testified she had looked to her left several times as she was crossing but did not see any vehicle until just before she was hit. At that point, she saw the car coming "very fast".

Weymen L. Edwards, assistant dean at University of Illinois, testified he was in a parking lot adjacent to Harrison Street. He was about to get into his car when he heard the screech of brakes. He then heard an "impact," looked up, and saw a dark object flying through the air 17 to 20 feet off the ground. He saw defendant's car "resting" against a fire hydrant. Immediately in front of the car, he saw "a person lying on the grass." He noticed defendant had left the car and had run towards plaintiff, who was lying on her side in the median behind the car. Two people in the back seat of the car threw beer cans out of the car onto the lawn.

Roger Clawinski, age 31, who had been driving a car for approximately 15 years, testified he was in his car on Morgan Street heading southbound. He stopped at a red light at the intersection with Harrison. As his light turned green, he saw defendant's car "run the light going westbound on Harrison Street at a high rate of speed." Clawinski estimated the speed of defendant's car as 65 miles an hour. Clawinski then saw defendant's car go from the left lane "up onto the sidewalk with sparks flying out from underneath the car."

Ward Swenson testified he was waiting for a bus on the south side of Harrison approximately 300 to 400 feet east of Morgan. He observed defendant's car going west at "over 60 miles an hour." As the car approached the intersection, "the light changed." The light was red when defendant's car went through the intersection.

Melvin Walker testified he is an officer for the University of Illinois Police Department. He was called to the scene of the accident. When he arrived, he saw plaintiff sitting on the curb of the median. He questioned defendant who admitted he was the driver of the vehicle involved in the accident. He asked defendant how fast he had been going. Defendant replied, "Around 40, 45 miles an hour." Walker stated the speed limit on Harrison is 30 miles an hour.

Officer James Monahan of the Chicago police department testified he arrived at the scene just as plaintiff was being taken away in an ambulance. In his investigation, he measured the skid marks left by defendant's vehicle. A diagram was introduced into evidence which purported to show the path of the skid marks from the point of impact with plaintiff across two lanes of traffic up onto the curb on the north side of Harrison. The skid marks started approximately 30 feet before the point of impact with plaintiff. On direct examination, Monahan testified

he measured 229 feet of skid marks. However, on cross-examination, he stated the skid marks could have been only 191 feet long. He also testified the road was dry.

Thad L. Aycock, assistant supervisor and instructor at Northwestern University Traffic Institute, testified for plaintiff as an expert witness as to his estimate of the speed of defendant's vehicle based on the length of skid marks found after the accident. He stated, based on the type of roadway surface on Harrison, the type of vehicle skidding, the pavement being dry, and the length of skid marks of defendant's car being 191 feet, in his opinion the speed of defendant's vehicle was between 56 and 63 miles an hour. Assuming 229 feet of skid marks, in his opinion the speed would be between 61 and 69 miles an hour. Aycock also made a calculation based on the length of skid marks being 203 feet. In his opinion, this speed was between 58 and 65 miles an hour.

John Johnson testified he was a passenger in defendant's car. He was seated in the front passenger side. As defendant drove westbound on Harrison, Johnson was turned around and talking to his brother, who was sitting in the back seat of the car. The car was traveling "approximately 30, 35, 40 miles an hour." When the car was 20 to 30 feet away from the intersection with Morgan Street, Johnson noticed the traffic light was green. He did not see the light turn yellow or red. After going through the intersection, the car swerved and there was an impact. At that time, Johnson did not know what had caused the impact. He had not seen any pedestrians attempting to cross the street in front of the vehicle. He ascertained later the impact was caused when the car hit a pedestrian. After the occurrence, Johnson asked defendant what had happened. Defendant told him, " 'A lady stepped out from the curb in front of me and come across the street.' "

Defendant testified he was traveling "about 30, 35 miles an hour" as he approached the intersection of Harrison and Morgan. When he was 15 to 20 feet away, the light was green. When defendant's car was in the intersection, the light turned yellow. At that time, defendant saw pedestrians at the intersection about halfway down the block. After he went through the intersection, he saw one pedestrian run across the street when he was 20 to 30 feet away from her. At this point, the pedestrian was more than halfway across the westbound lanes. Defendant swerved to the right to try to miss the pedestrian. However, the car struck the pedestrian. Defendant lost control of his car and hit a fireplug. Defendant stated the pedestrian he struck was not plaintiff. When he got out of his car after it came to a stop, defendant observed plaintiff sitting on the curb of the median behind the car.

Defendant further testified the road was a "little wet" because it had snowed the day before. Defendant admitted he pleaded guilty to

speeding or negligent driving stemming from this accident but that was because of "ignorance to the law." Someone instructed him to plead guilty. He stated if he knew the consequences of pleading guilty, he would not have done so.

In addition to the general verdict for plaintiff, the jury answered "No" to a special interrogatory as to whether plaintiff was guilty of contributory negligence.

On September 4, 1979, defendant filed a post-trial motion for judgment notwithstanding the verdict or, in the alternative, a new trial. In the motion, defendant averred plaintiff failed to prove defendant was guilty of negligence, plaintiff failed to prove she was free from contributory negligence, the court erred in giving certain instructions over objection of defendant, and the court erred in overruling defendant's objections during closing arguments. The motion also prayed that the jury's finding on the special interrogatory be set aside.

On September 12, 1979, defendant filed an amended post-trial motion. This added, for the first time, the contention:

"The Court erred in overruling the Defendant's objection to Plaintiff's reconstruction expert's testimony which was based on a hypothetical question which was intended to determine the speed of the Defendant's vehicle."

The trial court heard oral argument on the amended post-trial motion on November 14, 1979. The trial court stated it rejected the contentions of defendant with respect to all the points raised in the motion with the exception of the alleged error on the reconstruction testimony. The trial court felt letting Aycock testify was prejudicial error. The trial court accordingly vacated the special interrogatory and the verdict and granted defendant a new trial. Plaintiff then filed a motion to vacate this order. The trial court denied plaintiff's motion. The trial judge stated he had granted a new trial based not only on Aycock's testimony, but also "all the other testimony that was taken."

The record filed in this court with the plaintiff's petition for leave to appeal was not a complete record of all proceedings in this matter. It contained all the testimony of the witnesses above summarized which was pertinent to the issue of liability. The record also contained all the post-trial pleadings and transcripts of the post-trial hearings. The record did not contain the testimony of two doctors who testified as to plaintiff's injuries, the instructions tendered by the parties, the conference on instructions, or the final arguments.

Defendant moved this court summarily to deny plaintiff's petition for leave to appeal, or in the alternative, to order plaintiff to amend the record to include the above matters not originally filed. On February 25, 1980, plaintiff not having filed objections, we denied defendant's motion

summarily to deny the petition for leave to appeal but we ordered plaintiff to file a complete record. However, on March 10, 1980, on motion by plaintiff, we vacated the order and directed plaintiff could proceed upon the record as filed. We added, "Resp. [defendant] may indicate any deficiency in its response or may move to supplement the record."

On March 31, 1980, defendant filed a response to the petition for leave to appeal. Defendant urged the record before us is insufficient to present the questions for review in contravention of Supreme Court Rule 306(b) (Ill. Rev. Stat. 1979, ch. 110A, par. 306(b)), which states:

> "The record on appeal shall consist of whatever is necessary to present the questions for review and shall be filed with the petition."

Defendant argued in his response to the petition, and reargues in his brief, that we are obliged to review all the points raised in the amended post-trial motion, and we cannot do so with the record presently before us.

We do not agree with defendant's argument. Defendant's amended post-trial motion makes only general statements as to the errors alleged as the basis for a new trial. The Civil Practice Act provides "The post-trial motion must contain the points relied upon, particularly specifying the grounds in support thereof * * *." (Ill. Rev. Stat. 1979, ch. 110, par. 68.1(2).) It has been repeatedly held "[i]f a party fails to meet this standard of specificity the alleged error is waived on appeal." *Perry v. Chicago & North Western Transportation Co.* (1977), 54 Ill. App. 3d 82, 87, 369 N.E.2d 155, *appeal denied* (1978), 71 Ill. 2d 601, and cases there cited.

■■ Furthermore, to this date, defendant has not moved to supplement the record, despite having been invited to do so by our order of March 10, 1980. Moreover, in his brief, defendant has not argued the merits of any of the points raised in the post-trial motion with the exception of the one point relied on by the trial court; namely, the legal effect of the expert testimony presented by plaintiff. As above shown, the record before us is sufficient to argue virtually all of the points attempted to be raised in the defendant's amended motion for new trial. Thus, in our opinion, it is not necessary for us to consider any of the points sought to be raised in the amended post-trial motion but not argued by defendant in this court.

In *Ervin v. Sears, Roebuck & Co.* (1976), 65 Ill. 2d 140, 144, 357 N.E.2d 500, our supreme court held, "The decision of a trial court to grant a new trial is an exercise of discretion which should not be disturbed unless a clear abuse of that discretion is shown." Therefore, in the instant case we must determine whether the order granting a new trial constituted "a clear abuse" of the trial court's discretion.

The basis of the trial court's order granting a new trial is the decision of the supreme court in *Peterson v. Lou Bachrodt Chevrolet Co.* (1979),

76 Ill. 2d 353, 392 N.E.2d 1. *Peterson* was also an automobile collision case. Eyewitness testimony to the speed of the car involved in the accident was conflicting. Based on the length of the skid marks and other factors, a police officer testified the car involved was traveling at 75 to 80 miles an hour. An expert engineer testified the car was traveling in excess of 73 miles an hour.

The supreme court held it was not legally proper to supplement the conflicting testimony of eyewitnesses with the expert testimony because "the speed of an automobile is not a matter beyond the ken of the average juror * * *. The jurors could draw their own conclusions on the basis of eyewitness testimony." (*Peterson*, 76 Ill. 2d 353, 359.) The court also held the admission of the expert testimony was not harmless error because the evidence may have convinced the jury to assign more weight to the testimony of one eyewitness over another on this "closely contested" issue. The supreme court ordered a new trial. Actually, the *Peterson* court cited two previous supreme court decisions as authority for its position. *McGrath v. Rohde* (1972), 53 Ill. 2d 56, 61, 289 N.E.2d 619; *Plank v. Holman* (1970), 46 Ill. 2d 465, 471, 264 N.E.2d 12.

In the instant case, the trial judge correctly noted the applicability of *Peterson* in passing upon the amended post-trial motion. However, it is our considered opinion a new trial should not have been granted because of this testimony since defendant did not object to the expert testimony at any time prior to the filing of the amended post-trial motion. The record before us shows during Aycock's entire testimony only six objections were made by defendant. All of them were on specific questions by plaintiff's counsel and specific answers by Aycock. All but one of these objections were sustained and cured immediately. The other objection was overruled. At no time was any objection made by defendant to Aycock's testimony on the grounds it was prejudicial or otherwise improper upon the theory expressed in *Peterson*.

In *DeMarco v. McGill* (1948), 402 Ill. 46, 55, 83 N.E.2d 313, the court held:

> "The rule is that a party objecting to evidence must point out the objections specifically so as to afford the adverse party an opportunity to correct it. [Citation.] A party who seeks to exclude a piece of evidence should be explicit and disclose to the trial court all defects in the proposed proof which he expects to urge upon this court in the event of an appeal."

See also *Haymes v. Catholic Bishop of Chicago* (1968), 41 Ill. 2d 336, 342, 243 N.E.2d 203; *Johnson v. Bennett* (1946), 395 Ill. 389, 398, 69 N.E.2d 899.

In addition, no objection to this testimony was made in defendant's motions for directed verdict at the close of plaintiff's case or at the close of

defendant's case. Recently, this court reiterated the long-standing rule in Illinois as regards such a situation. In *Angelini v. Snow* (1978), 58 Ill. App. 3d 116, 118, 374 N.E.2d 215, we stated:

> "We believe that it is well settled that questions not presented to the court during a trial may not be raised for the first time on a post-trial motion to set aside the verdict and for a new trial. [Citations.] On such a motion the only errors to be considered are those which may have intervened on the trial. 'It is manifest that the court could not err in reference to a matter which was not presented on the trial.' *Devine v. L. Fish Furniture Co.* (1913), 258 Ill. 389, 391, 101 N.E. 539, 540."

■ In view of the fact defendant did not raise the point until he filed his amended post-trial motion, he also "must be deemed to have failed to preserve this issue for appellate review." (*Sprague v. Commonwealth Edison Co.* (1978), 59 Ill. App. 3d 342, 350, 375 N.E.2d 493, *appeal denied* (1978), 71 Ill. 2d 615.) We find the allowance of a new trial in the instant case constitutes reversible error.

Defendant also urges the trial judge may grant a new trial where he makes a determination there has not been a fair trial even though no objection is raised to the prejudicial testimony. Defendant cites *Freeman v. Chicago Transit Authority* (1965), 33 Ill. 2d 103, 210 N.E.2d 191. In *Freeman*, two plaintiffs brought suit for injuries alleged to have been sustained when one of defendant's buses ran into the rear of plaintiffs' car. A special interrogatory asked the jury whether defendant's bus driver was guilty of negligence that proximately contributed to cause the accident. The jury answered "No" but returned a verdict in favor of plaintiffs for $2500 each. The trial judge denied the post-trial motions of both parties but, on his own motion, he set aside the special finding of the jury on the ground it was against the manifest weight of the evidence and he entered judgment on the verdicts.

The supreme court ruled the trial court had the power to act upon its own motion and set aside the finding of the jury on the special interrogatory. The court stated that while section 68.1(2) of the Civil Practice Act "confines a litigant, upon appeal, to those matters specifically raised in the trial court, it contains nothing that suggests an intention to interfere with the power of a trial court to act upon its own motion." *Freeman*, 33 Ill. 2d 103, 105.

■ In our opinion, the situation presented in the case at bar is not comparable to *Freeman*. In *Freeman*, the trial court ruled the special finding of the jury was against the manifest weight of the evidence. There were no evidentiary errors to consider in so ruling. In the instant case, the trial court did not act on his own motion to set aside the special interrogatory and the verdict and grant a new trial. He acted on

defendant's amended post-trial motion, relying on grounds asserted in the motion. However, those grounds, whether raised in a motion by the defendant or by the trial court's own motion, are not proper grounds for allowance of a new trial in the case at bar because of the lack of timely objection to the expert testimony, as shown above.

Accordingly, the order granting a new trial is reversed. The cause is remanded with direction to enter judgment in favor of plaintiff upon the verdict.

Reversed and remanded with directions.

McGLOON and CAMPBELL, JJ., concur.